FIN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| R. INVESTMENTS, RLLP ) | Case No. 21-11011-EEB |
| EIN: 20-8043470 ) | Chapter 11 |
| ) | |
| Debtor-in-Possession. ) | |

**MOTION TO APPROVE POST-PETITION FINANCING PURSUANT TO SECTIONS 105, 363, 364(B), 364(E) AND 503(B), FED. R. BANKR. P. 2002, 4001 AND 9014, AND LOCAL BANKRUPTCY RULES 2081-1, 4001-2 AND 9013-1**

COMES NOW R. Investments, RLLP, debtor and debtor in possession herein (the "**Debtor**") in the above referenced chapter 11 case, by and through the undersigned proposed counsel, hereby submits this Motion to Approve Post-Petition Financing Pursuant to Sections 105, 363, 364(b), 364(e) and 503(b), Fed. R. Bankr. P. 2002, 4001 and 9014, and Local Bankruptcy Rules 2081-1, 4001-2 and 9013-1 (the "**Motion**").  In support of the Motion, the Debtor states as follows:

**Jurisdiction and Venue**

1. The United States Bankruptcy Court for the District of Colorado (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicate for the relief requested herein includes §§ 105, 362, 363, 364(b), 364(e), and 507, Fed. R. Bankr. P. 2002, 4001, and 9014, and Local Bankruptcy Rules 2081-1, 4001-2 and 9013-1.

**Background**

3. On March 4, 2021 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Colorado.

4. The Debtor is authorized to operate its business and manage its affairs as a debtor-in-possession under 11 U.S.C. §§ 1107(a) and 1108. No creditors' committee has yet been appointed in this case by the Office of the United States Trustee, nor has any trustee or examiner been requested or appointed.

A.   **The Debtor's Business Operations.**

5. A description of the Debtor's business, the reasons for filing this chapter 11 case and the relief sought from this Court to allow for a smooth transition into operations under chapter 11 is set more fully described in the Declaration of Michael Bennett in Support of First Day Relief

(the "**First Day Declaration**"), which the Debtor hereby adopts and incorporates as if fully set forth herein.

6. The Debtor is a real estate investment firm headquartered in Denver, Colorado. Its primary business centers around identifying and acquiring distressed real estate assets for rehabilitation, transformation, and stabilization and in particular: (a) distressed multi-dwelling units ("**MDUs**") in markets with at least 350 units and which would allow for up to 150 units to be managed; and (b) distressed hospitality and hotel properties (the "**Hotels**"). The Debtor does not directly own the MDUs or the Hotels. Instead, the Debtor, together with other unaffiliated investors, owns membership interests in limited liability companies which in turn own the MDUs and Hotels (the "**Non-Debtor SPEs**").

7. The Debtor's assets consist of various personal property interests including software and membership interests in the Non-Debtor SPEs. There are several non-debtor affiliates (the "**Non-Debtor Affiliates**") that complement the Debtor's business and Non-Debtor SPEs. The Non-Debtor Affiliates consist of the following entities: (i) R Restoration, LLC, a Louisiana limited liability company, (ii) RTB Construction Holdings, Inc., a Colorado corporation, (iii) R Communities, LLC, a Colorado limited liability company, (iv) R Empowerment, a Colorado nonprofit corporation, (v) R Teknologies, LLC, a Louisiana limited liability company, (vi) R Academy Global, an entity registered with the Washington D.C. Department of Consumer and Regulatory Affairs Corporations Division, and (vii) 3501 E. Independence Place Operator, LLC, a Colorado limited liability company. The ownership structure of the Non-Debtor Affiliates is the same as Debtor's ownership structure: Mr. Travis Steffens (99%) and Ms. Jessica Perrin (1%) (collectively, the "**DIP Lenders**").

**B.   The Debtor's Prepetition Debt Obligations and Request to Use Cash Collateral.**

8. On November 7, 2017, the Debtor made, executed and delivered its 18% Senior Secured Note Due November 1, 2019 (the "**Senior Secured Note**") to DS VI, LLC ("**DS**"). The Senior Secured Note evidenced a loan to the Debtor in the principal amount of up to $3,879,000 (the "**Loan**"). The Loan is secured by a security interest in substantially all of the Debtor's assets including, but not limited to, accounts, inventory, and software (the "**DS Collateral**"). DS perfected its security interest in the DS Collateral when it filed its UCC-1 with the Colorado Secretary of State on February 16, 2018 as Filing No. 20182015391. The Loan matured by its terms on November 1, 2019. Although the Loan has matured, DS has taken no steps to enforce its rights under the Senior Secured Note. As of January 1, 2021, the Debtor has agreed that the obligations due and owing under the Senior Secured Note are $5,021.040.41 consisting of: (i) $3,529,000.00 in principal; and (ii) $1,492,040.41 in capitalized interest (the **Secured Claim**").

9. In addition to the Secured Claim, the Debtor also has significant unsecured debt to numerous holders of unsecured promissory notes (the "**Noteholder Claims**"). According to the Debtor's books and records, the Debtor has minimal to no unsecured trade debt.

10. The Debtor's intent in this chapter 11 case is to file a plan of reorganization within the sixty (60) days in order to make a swift exit from chapter 11.

4831-3217-2254.2

11. Concurrent with the filing of this Motion, the Debtor has also requested authority from the Court to use the cash collateral of DS in connection with sustaining their operations entering into and during this chapter 11 case (the "**Cash Collateral Motion**"). As set forth in the Cash Collateral Motion, the Debtor proposes to grant DS, as adequate protection for the use thereof, replacement liens upon all post-petition assets, insurance of all the DS Collateral and increased financial reporting. Additionally, the Debtor has agreed to use cash collateral solely in accordance with a defined budget (the "**Budget**"). A true and correct copy of the Budget is attached hereto as Exhibit A. The funds borrowed under this Motion will supplement the Debtor's use of cash collateral to the extent of any shortfalls and ease the strain on the Debtor's use of cash collateral.

## Relief Requested

12. Through this Motion, DIP Lenders have agreed to lend to the Debtor all of the Non-Debtor Affiliates' monthly net income, of which they would be entitled to all of such income, to help fund this chapter 11 case and bankruptcy-related costs and expenses, the Debtor's working capital and general corporate expense requirements which will ease the strain on the Debtor's use of cash collateral to fund such needs (the "**DIP Loan**").[1] The DIP Loan is evidenced by a term sheet (the "**Term Sheet**") and loan agreement (the "**DIP Loan Agreement**"). The Term Sheet and DIP Loan Agreement are attached hereto as Exhibit B. The Motion and the relief requested herein is supported by the First Day Declaration, filed contemporaneously herewith and expressly incorporated herein. The Debtor seeks authority to borrow under the Term Sheet and DIP Loan Agreement in accordance with the Budget. If approved by the Court, the DIP Lenders will be entitled to an administrative expense claim under §§ 364(b) and 503(b). The Debtor seeks authority to borrow under the Term Sheet and DIP Loan Agreement on an expedited, interim basis (the "**Interim Order**") until such time as the Court enters a final order (the "**Final Order**"). A copy of the Interim Order is attached hereto as Exhibit C.[2]

## Summary of Material Provisions[3]

13. Pursuant to Fed. R. Bankr. P. 4001(c)(1)(B) and Local Rule 4001-2(a)(1), the Debtor provides the following summary of the essential terms of the Term Sheet, DIP Loan Agreement or the Interim Order as applicable:

---

[1] For ease of administration, the Non-Debtor Affiliates will be making the debtor-in-possession loan directly to the Debtor on behalf of the equity holders.

[2] The Debtor does not anticipate significant changes with respect to the form of the Final Order from the Interim Order.

[3] Capitalized terms not specifically described in this Section shall have the meanings ascribed to them in the Term Sheet.

3

4831-3217-2254.2

| Essential Term | Summary and Location in Order |
|---|---|
| **Repayment** | Unless otherwise agreed by the DIP Lenders in writing, the Debtor shall repay all outstanding obligations under the DIP Loan on the Maturity Date.<br><br>*See* DIP Loan Agreement at ¶ 8; Interim Order at ¶ 9. |
| **Interest Rate** | Five percent (5%) per annum. *See* DIP Loan Agreement at ¶ 6. |
| **Maturity Date** | All amounts borrowed under the DIP Loan will be due and payable in full in cash on the earliest of (i) the date that is one (1) year after the petition date; (ii) the effective date of any Plan proposed by the Debtor; or (iii) the consummation of any sale or other disposition of all or substantially all of the assets of the Debtor pursuant to section 363 of the Bankruptcy Code (collectively, the "**Maturity Date**").<br><br>*See* DIP Loan Agreement at ¶ 6. |
| **Events of Default and Remedies** | The occurrence and continuation of any one or more of the following events shall constitute an Event of Default: (a) the Debtor shall fail to pay within ten (10) days of the due date the obligations created by DIP Loan Documents; (b) the DIP Loan Documents shall cease to be in full force and effect and valid; (c) the Interim Order or Final Order shall be modified, vacated, supplemented or amended in any respect on the request of any party other than the Debtor or DIP Lenders; (d) the Bankruptcy Court shall enter an order: (i) dismissing the Bankruptcy Case, (ii) converting the Bankruptcy case to Chapter 7 of the Bankruptcy Code, or (iii) appointing a Chapter 11 trustee or examiner in the Bankruptcy Case; (e) the Bankruptcy Court shall enter an order approving a Disclosure Statement in connection with a Plan of Reorganization proposed by a third party which Plan does not provide for payment in full in cash of the DIP Loan on the Maturity Date or upon confirmation of the proposed Plan; (f) there occurs any effective or actual change in control of the Debtor or absent the prior written consent of the DIP Lenders; or (g) the Bankruptcy Court enters any order which materially and adversely affects, impacts or otherwise prejudices the DIP Lenders' rights and obligations under the DIP Loan Documents.<br><br>In every such Event of Default and at any time thereafter during the continuance of such Event of Default without further order of or application to the Bankruptcy Court the DIP Lenders may take any or all of the following actions at the same or at different times: (x) by notice to the Debtor declare the DIP Loan together with all |

4

| | |
|---|---|
| | interest, fees and expenses accrued thereon to be and the Note shall thereupon become immediately due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Debtor; (y) refuse to lend any further amounts of Net Revenue to the Debtor; and (z) upon written notice to the Debtor exercise such remedies as are provided for elsewhere in DIP Loan Documents, or as may otherwise be available under applicable law.<br><br>*See* DIP Loan Agreement at ¶¶ 13-14; Interim Order at ¶ 10. |
| **Liens** | None. |
| **Interim and Final Borrowing Limits** | An amount not less than one hundred percent (100%) of each Non-Debtor Affiliate's monthly Net Revenue. The intent of the DIP Lenders in making the DIP Loan is to lend the entirety of each Non-Debtor's monthly Net Revenue to Debtor, to the extent Net Revenue is generated, in order to fund its operations during the Bankruptcy Case including wages, operating expenses and ongoing administrative expenses. The Non-Debtor Affiliates' monthly Net Revenue is presently uncertain. The DIP Lenders anticipate that there will be approximately $120,000 available starting in May 2021. To the extent the Non-Debtor Affiliates do not generate Net Revenue for any particular month, the DIP Lenders shall not be obligated to make any DIP Loan to the Debtor.<br><br>*See* DIP Loan Agreement at ¶ 3; Interim Order at ¶¶ 5-6. |
| **Borrowing Conditions** | The existence of Net Revenue incurred by the Non-Debtor Affiliates.<br><br>*See* DIP Loan Agreement at ¶ 3; Interim Order at ¶¶ 5-6. |
| **Establishment of Timeframe for Filing a Plan** | The timeframes in accordance with Section 1121 of the Bankruptcy Code.<br><br>*See* Term Sheet. |
| **Fees, Costs and Charges Paid or Payable by Debtor or any Other Person or Entity.** | If an Event of Default occurs, the Debtor shall pay all out-of-pocket expenses incurred by the DIP Lenders including reasonable attorneys' fees and disbursements of the DIP Lenders' counsel in connection with such Event of Default and collection and other enforcement proceedings resulting therefrom.<br><br>*See* DIP Loan Agreement at ¶ 23; Interim Order at ¶ 5. |

5

4831-3217-2254.2

| | |
|---|---|
| **Use of Funds Limitation; Budget** | Proceeds from the DIP Loan shall be used only in accordance with the Budget attached hereto as <u>Exhibit A</u>.<br><br>*See* DIP Loan Agreement at ¶ 4; Interim Order at ¶ 7. |
| **Protections Under Sections 363 and 364** | The DIP Lenders shall be granted an administrative expense claim, pursuant to Sections 364(b) and 503(b) of the Bankruptcy Code.<br><br>*See* DIP Loan Agreement at ¶ 7; Interim Order at ¶ 8. |

14. Pursuant to Local Rule 4001-2(a)(2), the Debtor submits that the proposed DIP Loan does not contain any of the provisions listed therein requiring mandatory disclosure.

## Basis for Relief Requested

15. Pursuant to 11 U.S.C. § 364(b), the Court, after notice and an opportunity for a hearing, may authorize the debtor to "obtain unsecured credit or to incur unsecured debt . . . allowable under section 503(b)(1) of this title as an administrative expense." As stated by Judge Brooks "[t]he ability of the Debtor to obtain sufficient working capital and liquidity through the incurrence of indebtedness for borrowed money and other financial accommodations is vital to the Debtor. The preservation and maintenance of the going concern value of the Debtor is integral a successful reorganization of the Debtor pursuant to the provisions of Chapter 11 of the Bankruptcy Code." *In re Western Pac. Airlines*, 223 B.R. 567, 568 (Bankr. D. Colo. 1997); *see also In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 36 (Bankr. S.D.N.Y. 1990) ("It is given that most successful reorganizations require the debtor-in-possession to obtain new financing simultaneously with or soon after the commencement of the Chapter 11 case.").

16. Assuming the statutory predicates for post-petition financing have been met, courts generally defer to the Debtor's business judgment so long as the financing does not contain terms that leverage the bankruptcy process for the benefit of a third party over the estate and does not unfairly cede control of the reorganization process to a single non-debtor party. *See, e.g., In re Ames Dept. Stores, Inc.*, 115 B.R. at 40; *In re YL W. 87th Holdings I LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010) ("Courts have generally deferred to a debtor's business judgment in granting section 364 financing."). Further, "business judgments should be left to the board room and not to this Court." *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (Bankr. D. Colo. 1985); *see also In re L.A. Dodgers LLC*, 457 B.R. at 313 ("Under the [business judgment] rule, courts will not second guess a business decision, so long as corporate management exercised a minimum level of care in arriving at the decision.").

17. In this case, the Debtor needs the proceeds from the DIP Loan in order to help fund the operations of this Chapter 11 case. The DIP Loan will allow the Debtor to meet post-petition obligations and provide financial strength that will assure the Debtor the ability to operate and pay post-petition obligations on a timely basis to the extent the Non-Debtor Affiliates generate Net Revenue. Furthermore, the proceeds from the DIP Loan will ease the strain on the Debtor's use of

cash collateral. The post-petition obligations include wages, operating expenses and ongoing administrative expenses. The DIP Loan will be used by the Debtor to provide additional liquidity and to meet the expenses set forth in the Budget. The terms of the DIP Loan are fair and reasonable, and the Debtor is unable to obtain post-petition financing on better terms. No other post-petition lending that could be available to the Debtor would be on an unsecured basis capable of funding immediately upon court approval. Moreover, the DIP Lenders are not requesting that the obligations be granted administrative superpriority or secured by assets of the estate.

18. The Debtor believes, in its reasonable business judgment, that the DIP Loan is the best financing option available under the present circumstances, particularly given the expedited timeframe within which the Debtor must fund its working capital and operating expense requirements and fees, costs, and expenses incurred during this Chapter 11 case. Accordingly, the Debtor submits that the DIP Loan should be approved on the terms set forth in the Interim Order and subsequently enter Final Order on similar terms.

## Approval on an Interim Basis Should be Granted

19. Under the Court's Local Bankruptcy Rules:

When Financing Motions are filed with the Court on or shortly after the date of entry of the order for relief pursuant to L.B.R. 2081-1, the Court may grant interim relief pending review by the interested parties of the proposed debtor-in-possession financing arrangements. Such interim relief is intended to avoid immediate and irreparable harm to the estate pending a final hearing. The Court may deny the interim relief requested in the absence of a reasonable opportunity to object.

L.B.R. 4001-2(b).

20. The Debtor submits that entry of the Interim Order, in the time periods and for the financing amounts requested herein, is appropriate and necessary to avoid immediate and irreparable harm to the estate pending a final hearing on this Motion. Simply put, the availability of the Non-Debtor Affiliates' Net Revenue will help ease the Debtor's transition into Chapter 11 and not strain the use of cash collateral. Furthermore, the terms of the DIP Loan are entirely fair and appropriate given that the DIP Lenders are not requesting a security interest in the Debtor's assets or a superpriority administrative expense claim. Thus, approval of the Motion is necessary to avoid immediate and irreparable harm to the Debtor's estate pending the Final Hearing, pursuant to L.B.R. 4001-2(b).

## Notice

21. Pursuant to Fed. R. Bankr. P. 4001(c)(1) and (3) and 9014 and L.B.R. 2018-1(b), 4001-2(a) and 9013-1, a copy of this Motion has been or will be immediately served by facsimile, email, overnight mail, or hand delivery, to: (i) the United States Trustee for the District of Colorado; (ii) any known pre-petition secured creditors; (iii) those entities or individuals included on the Debtor's list of 20 largest unsecured creditors; (iv) all parties requesting notices pursuant to Fed. R. Bankr. P. 2002; (v) the IRS and other relevant government agencies; and (vi) all parties to

the DIP Loan Agreement (collectively, the "**Notice Parties**"). The Debtor submits that, considering the nature of the relief requested, no other or further notice need be given.

22. Pursuant to L.B.R. 4001-2(c), upon entry of the Interim Order, the Debtor will serve a copy of the Interim Order, together with a notice of the Final Hearing on the Motion in conformity with L.B.R. 9013-1, within five (5) business days on the Notice Parties. The Debtor requests the Court set a deadline to object to entry of the Final Order, which deadline will be included in the notice.

## Conclusion

**WHEREFORE**, the Debtor respectfully requests this Court entry of an order, substantially in the form of the Interim Order filed herewith, granting the Motion and approving the Term Sheet and DIP Loan Agreement on an interim basis, setting a Final Hearing on the Motion, and granting such other and further relief as may be just and proper.

Dated: March 4, 2021.                Respectfully submitted,

**MOYE WHITE LLP**

By: */s/ Patrick R. Akers*
Timothy M. Swanson (Colorado No. 47267)
Charles Greenhouse (Colorado No. 10506)
Patrick Akers (Colorado No. 54803)
1400 16th Street 6th Floor
Denver, Colorado 80202-1486
Tel: (303) 292-2900
Fax: (303) 292 4510
Tim.Swanson@moyewhite.com
Charles.Greenhouse@moyewhite.com
Patrick.Akers@moyewhite.com
*Proposed Counsel to the Debtor-in-Possession*