**IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re: | ) | Case No. 21-11011-EEB |
| | ) | |
| R. INVESTMENTS, RLLP, | ) | Chapter 11 |
| EIN: 20-8043471 | ) | |
| | ) | |
| Debtor. | ) | |

**DEBTOR'S RESPONSE IN OPPOSITION TO
FLECTAT, LTD.'S MOTION FOR RELIEF FROM STAY**

R. Investments, RLLP (the "**Debtor**"), by and through undersigned counsel, for its response in opposition to FLECTAT, LTD.'s ("**FLECTAT**") *Motion for Relief from Stay* [Docket No. 231] (the "**Motion**"), states as follows:

**INTRODUCTION**

1. The Debtor scheduled a claim against certain insurers for failure to make payment on a claim under a prepetition insurance policy. Prepetition, the Debtor commenced the Maryland Case (as defined below) against those insurers to recover approximately $2.2 million. Apparently displeased with litigating in Maryland state court, one of the insurers, FLECTAT,[1] initiated a prepetition declaratory judgment action in Ohio federal court three months later. The Ohio Case (as defined below) is premised on the exact same set of facts as the Maryland Case.

2. Since the Petition Date, FLECTAT has *thrice* attempted to litigate the merits of the claims and defenses in the two actions in the context of stay proceedings. After the Debtor filed a suggestion of stay in the Ohio Case, FLECTAT opposed staying the case as to the Debtor under the guise that the Debtor was nothing more than a "nominal 'interested party.'" The Ohio Court flatly rejected FLECTAT's argument. Rather than employ special counsel in the Ohio Case to file a reply, the Debtor moved this Court for entry of an order enforcing the automatic stay against

---

[1] Under the relevant policy, a syndicate of entities, including FLECTAT, is responsible for the risk.

FLECTAT. Again, FLECTAT opposed that motion, and continued to oppose that motion even after the Ohio Court issued its order. FLECTAT's opposition raised the very factual and legal issues underscoring the already-pending Ohio Case and Maryland Case. FLECTAT has now repackaged its two oppositions into a motion for relief from stay, continuing its nearly three-month barrage of the Debtor—the purported "nominal party" to the Ohio Case.

3. By this Motion, FLECTAT seeks relief from stay to continue the Ohio Case not for "cause" under section 362(d)(1) of the Bankruptcy Code and the applicable *Curtis* factors, but, instead, under section 362(d)(2). Under subsection (d)(2), FLECTAT must prove that the Debtor does not have equity in property, which FLECTAT narrowly construes to mean a certain insurance policy. By intentionally seeking relief under subsection (d)(2), FLECTAT creates a procedural nightmare, requiring the Court to invade the province of the Ohio Court and Maryland Court, and resolve the substantive factual and legal issues underlying those two prepetition actions. To grant stay relief under subsection (d)(2), as elected by FLECTAT, the Court must answer the very question before the two non-bankruptcy courts: does the Debtor have an interest in certain prepetition insurance contracts? Resolution of these issues before this Court is improper not only because FLECTAT has already initiated an action to resolve such issues, but also because FLECTAT raises such issues in the context of a stay relief motion. Resolution of any interest in prepetition property must occur through an adversary proceeding. By raising the issue in a stay relief proceeding, FLECTAT is improperly circumventing the procedural safeguards provided in any adversary proceeding and already afforded to the parties in the Ohio Case and Maryland Case.

4. Notwithstanding, to the extent the Court endeavors to adjudicate the issues, claims, and defenses raised in the Ohio Case, the Debtor has asserted a colorable claim to proceeds under the insurance contracts. The Debtor has scheduled its interest in any proceeds under the insurance

contracts, and stated why it is entitled to recover against those insurers. FLECTAT cannot prove, without improperly adjudicating the merits of those claims and defenses, that the Debtor has no equity in the insurance contracts. Furthermore, the Debtor's contingent claims against the insurers is critical to an effective reorganization because, as presently valued, any recovery would pay off all secured claims. Accordingly, the Court should deny the Motion.

## BACKGROUND

5.  On March 4, 2021 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

6.  The Debtor continues to have possession of and manage its business and property as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

**A.     The Debtor's Interest in Insurance Proceeds**

7.  The Debtor is a real-estate investment firm that identifies distressed real estate assets for the purpose of rehabilitation, transformation, and stabilization. One such property was 4747 Montgomery Road, Cincinnati, Ohio 45212 (the "**Property**").

8.  The Debtor partnered with a non-Debtor affiliate, 4747 Montgomery Road Partners, LLC ("**4747**"), and the current owners of the Property, Dash 163, LLC and Arisha, Inc. (together, the "**Owners**"), to rehabilitate the Property.

9.  In 2019, the Debtor's insurance policy was expiring, and the Debtor sought to obtain insurance for the Property to include coverage for theft and other perils [Docket No. 231-4, ¶ 28].

10. On April 8, 2019, an agent for Certain Underwriters at Lloyd's, London ("**Lloyd's**") offered to provide to the Debtor vacant building coverage for the Property, which included coverage for theft [*Id.* ¶ 36]. The Debtor accepted that offer, and Lloyd's bound the

insurance and confirmed the same to the Debtor's agent on April 12, 2019 [*Id.* ¶ 43]. This confirmation of insurance (the "**Binder**") included a "Burglary & Robbery Protective Safeguard," and is a valid contract under Georgia law [*Id.* ¶¶ 43, 47].

11.    A Lloyd's agent countersigned a policy of insurance (the "**Policy**") on April 15, 2019, and delivered the Policy to the Debtor on or around April 23, 2019 [*Id.* ¶¶ 78–79, 82].

12.    On April 24, 2019, Lloyd's prepared and issued an endorsement to the Policy which named 4747 as the named insured, making the change effective to April 12, 2019 [*Id.* ¶ 83].

13.    The endorsed Policy was delivered to the Debtor's agent on or after April 24, 2019 [*Id.* ¶ 84].

14.    The Property was broken into, vandalized, and burglarized (the "**Incident**") [*See generally id.*]. The exact date of the Incident is unknown, but alleged to have taken place between April 14 and May 3, 2019 [*Id.* ¶ 14].

15.    The Debtor submitted a claim to Lloyd's on account of the Incident [*Id.* ¶ 23]. Lloyd's failed and refused to make payment on that claim [*Id.* ¶ 24].

16.    The Debtor maintains it suffered $2,266,995.63 in losses [*Id.* ¶ 20]. The Debtor scheduled its interest in this claim as $900,000.00 on *Amended Schedule A/B: Assets—Real and Personal Property* ("**Schedule A/B**") [Docket No. 91 at 6].

**B.    The Maryland Case**

17.    The Debtor filed suit against Lloyd's and other insurers in the Circuit Court for Baltimore County, Maryland. *See R. Investments, RLLP, et al. v. Certain Underwriters at Lloyd's, London, et al.*, No. C-03-CV-20-003979 (Md. Cir. Ct. Nov. 4, 2020) (the "**Maryland Case**"). In the Maryland Case, the Debtor or 4747 (depending on which date the Incident occurred) seek to

hold Lloyd's and other insurers accountable for their breach of the Binder or the Policy [Docket No. 231-4].

18. The Maryland Case defendants have filed a motion to dismiss, which is fully briefed and pending before the court. *See* Docket, Maryland Case.

19. On June 2, 2021, the Court granted the Debtor's application to employ the Law Offices of Silver & Brown to continue prosecuting the Maryland Action [Docket No. 134].

20. The Maryland Case is currently stayed, and the Debtor has taken no actions to proceed prosecuting that case. A copy of the Order staying the Maryland Case is attached as **<u>Exhibit 1</u>**.

**C.  The Ohio Case**

21. Three months later after the Debtor filed the Maryland Case, FLECTAT initiated the Ohio Case. FLECTAT claims to be the lead underwriter of the Policy [Docket No. 231-1, ¶ 2].

22. The Ohio Case is a declaratory judgment action, which is premised on the exact same set of facts as the Maryland Case [*See generally* Docket Nos. 231-1, 231-4]. In the Ohio Case, FLECTAT seek a number of declarations, including, that "the Policy does not provide coverage for theft and should not be reformed to provide such coverage," "the binder was the April 12, 2019 document titled binder," and "the binder was not in effect because the Policy had been issued when the claimed losses occurred" [Docket No. 231-1, ¶¶ 71, 95, 101].

23. The defendants moved to dismiss this action, in part, because the already-filed Maryland case will resolve all of the issues before the court, and because FLECTAT is "seek[ing] to circumvent the rules of the game" by "get[ting] a judgment in its favor prior to the substantive, merit-based case in Maryland state court so that it can claim res judicata," which amounts to an improper use of the Declaratory Judgment Act [Docket No. 231-6, at 2].

5

24. On July 14, 2021, the Debtor filed a suggestion of bankruptcy and motion to stay. *See* Docket, Ohio Case.[2]

25. In opposition to the suggestion of stay, FLECTAT claimed that the Ohio Case does not turn on the Debtor's property because "it is not an insured or a loss payee on the policy at issue in the declaratory judgment action," and that "[t]he instant declaratory judgment action is not an action against R Investments because R Investments is named only as a nominal 'interested party' in the declaratory judgment action and no relief is sought against it." *See* FLECTAT's Response in Opposition to Motion to Stay 1–2, Ohio Case, Aug. 2, 2021, ECF No. 27, a copy of which is attached as **Exhibit 2**. FLECTAT further requested that the Southern District of Ohio determine whether the automatic stay applies to the Ohio Case.

26. On August 27, 2021, the Ohio Court rejected FLECTAT's argument, and held that the stay was in effect as to the Debtor [Docket No. 231-3] (the "**Ohio Order**").

27. The Debtor and FLECTAT disagree as to when the Incident occurred. The Debtor maintains the Incident occurred between April 14 and May 3, 2019, whereas FLECTAT maintains the Incident occurred between April 25 and May 8, 2019 [*Compare* Docket No. 231-4, ¶ 14 *with* Docket No. 231-1, ¶ 17]. Depending on when the Incident occurred, either the Debtor or 4747 will be entitled to any award of damages.

D.  **Relevant Facts from the Bankruptcy Case**

28. Rather than retain counsel in the Ohio Case, the Debtor filed its *Motion for Entry of Order Enforcing the Automatic Stay Against FLECTAT, LTD.* [Docket No. 192] (the "**Enforcement Motion**") on August 11, 2021. In this motion, the Debtor sought entry of an order confirming that the automatic stay applied to the Debtor in the Ohio Case.

---

[2] The Debtor ultimately decided not to employ its Ohio Case counsel in an effort to conserve estate resources and avoid litigating the same set of facts and legal issues in two different forums.

29. FLECTAT filed its response in opposition to the Enforcement Motion on August 24, 2021 [Docket No. 209].

30. After the Ohio Court held that the stay was in effect as to the Debtor in the Ohio Case as set forth in the Ohio Order, the Debtor withdrew the Enforcement Motion as the relief sought therein became moot [Docket No. 218].

31. FLECTAT now seeks relief from the automatic stay to proceed with the Ohio Case as requested in the instant Motion [Docket No. 231].

**RESPONSE**

32. FLECTAT's use of section 362(d)(2) of the Bankruptcy Code is an improper procedural vehicle by which to seek relief from the automatic stay. FLECTAT cannot meet its burden of proof to demonstrate that the Debtor has no equity in the Policy or the Binder, and thus obtain relief from stay to continue prosecuting its claims in the Ohio Case, without resolving the very facts and legal issues in the Ohio Case. 11 U.S.C. § 362(g). Adjudicating the merits of claims and defenses is wholly improper in a summary stay relief proceeding. Such actions must take place in an adversary proceeding. If FLECTAT truly wished to proceed with the Ohio Case, it should have sought relief under section 362(d)(1) and the *Curtis* factors. Instead, FLECTAT has forced the Debtor to combat its attempts to litigate the underlying facts and legal issues in the Ohio Case and Maryland Case for a third time in this 362(d)(2) proceeding.

**A.    Section 362(d)(2) of the Bankruptcy Code Is an Improper Vehicle to Obtain Stay Relief**

33. A creditor may obtain relief from the automatic stay under section 362(d)(2) of the Bankruptcy Code where, with respect to certain property, "the debtor does not have an equity in such property" and "such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2)(A)-(B).

34. "Many cases hold that, for purposes of relief from stay under this provision, the statutory term 'equity' means the difference between the value of the debtor's interest in the property and the total of all encumbrances against the property." *City of Mentor v. Great Plains Expl., LLC (In re Great Plains Expl., LLC)*, No. 21-10058-TPA, 2015 Bankr. LEXIS 3178, at *5 (Bankr. W.D. Pa. Sept. 21, 2015) (citations omitted). "This suggests that Section 362(d)(2) relief from stay was intended to be limited to secured creditors which have collateral rights in the property at issue, a category into which [FLECTAT] clearly does not fall." *Id.* FLECTAT does not hold—and does not claim to hold—a secured claim against the Debtor on account of the Ohio Case. Accordingly, proceeding under section 362(d)(2) of the Bankruptcy Code is inappropriate.

35. Furthermore, courts have routinely held that a section 362(d) summary proceeding is inappropriate to litigate the validity of a claim or contract:

> Stay litigation [pursuant to section 362(d)] is limited to issues of the lack of adequate protection, the debtor's equity in the property, and the necessity of the property to an effective reorganization. Hearings on relief from the automatic stay are thus handled in a summary fashion. ***The validity of the claim or contract underlying the claim is not litigated during the hearing***.

*Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 740 (9th Cir. 1985) (emphasis added), *cert. denied*, 474 U.S. 828 (1985). *See also Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 32 (1st Cir. 1994) ("The limited grounds set forth in the statutory language, reading the context of the overall scheme of § 362, and combined with the preliminary, summary nature of the relief from stay proceedings, have led most courts to find that such hearings do not involve a full adjudication on the merits of claims, defenses, or counterclaims, but simply a determination as to whether a creditor has a colorable claim to property of the estate." (citations omitted)).

36. The Debtor unequivocally asserts equity in the Policy and the Binder, and believes its contingent claim against Lloyd's is valued at $900,000.00 [Docket No. 91, at 6]. Any argument to the contrary would require the Court to resolve questions of fact and issues of law, and to

adjudicate the merits of the parties' claims and defenses in the Ohio Case and Maryland Case. The Court would need to identify which law applies: Georgia, Maryland, or Ohio. *Compare* Mot. ¶ 18 *with* Docket No. 231-4, ¶¶ 1–6, 44–47. The Court would need to wade through legal and factual issues regarding the effect and timing of the endorsement. Although FLECTAT disputes the "Debtor's position that it may be entitled to the policy proceeds if the loss occurred prior to the issuance of the change endorsement retroactively naming 4747 Montgomery Road as the insured," the Debtor's position is supported by legal authority and the factual record. Mot. ¶ 18; *Sec. Ins. Co. v. Baad*, 657 So. 2d 10, 10 (Fla. Ct. App. 1995) ("The acceptance of an alteration or modification of the original contract, to be effective, must precede the loss." (quoting George J. Couch, Cyclopedia of Insurance Law § 65:13 (2d ed. 1983)); Letter Dated October 10, 2019 Between Wacks and Costello (showing Lloyd's' counsel communicating with the Debtor, which was identified as the insured), attached as **Exhibit 3**. Assuming the endorsement question is resolved in the Debtor's favor, the Court would also need to make a factual finding of when the Incident occurred. As set forth by the Debtor, and assuming the endorsed Policy was effective on April 24, 2019, the Debtor would only have equity in the Binder or Policy if the Incident occurred between April 14 and April 24, 2019. *See supra* ¶¶ 12–14. These inquiries are entirely inappropriate to address in a summary stay relief proceeding and are best suited to be resolved in either the Maryland Case or Ohio Case, which were pending prepetition.

37.     Even if section 362(d)(2) of the Bankruptcy Code applied here, which it does not, FLECTAT fails to properly identify—and prove the equity in—the correct "property." The property subject to the 362(d)(2) analysis is not just the Policy, but the Policy ***and the Binder***. *See* Mot. ¶ 13. In the Ohio Case, FLECTAT does not simply seek relief with respect to the Policy, as it implies in its Motion. *See generally* Mot. (failing to even mention the Debtor's interest in the

9

Binder). FLECTAT seeks declarations which would impact the Debtor's interest in the Binder: it seeks declarations that "the binder was the April 12, 2019 document titled binder" and that "the binder was not in effect because the Policy had been issued when the claimed losses occurred" [Docket No. 231-1, ¶¶ 95, 101]. FLECTAT is clearly seeking stay relief against more than just the Policy. FLECTAT has not carried its burden with respect to proving a lack of equity in the Policy and the Binder as required under section 362(g) of the Bankruptcy Code.

38. Moreover, the Policy and the Binder are necessary to an effective reorganization. *See* 11 U.S.C. § 362(d)(2)(B). Even if the Court determined that the Debtor has no interest in the Policy or the Binder, such a ruling only allows FLECTAT to proceed with the Ohio Case—it does not have preclusive effect on the Debtor's contingent claims against Lloyd's. *See Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 33, 35 (1st Cir. 1994); *Nat. Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656, 670 (S.D.N.Y. 1991). In other words, the Debtor may still prevail on its claims against Lloyd's. The Debtor has asserted $2,266,995.63 in damages, and has valued its claim at $900,000.00 [Docket No. 91, at 6]. The Debtor's scheduled lawsuit is one of its asset in this case [*See generally id.*]. Even if the Debtor realized only $900,000.00, under the Debtor's existing plan of reorganization, the Debtor could satisfy the entirety of its secured claim and/or potentially pay administrative expense claims [Docket No. 196, at 10–11]. Accordingly, any recovery under the Binder or the Policy is necessary for an effective reorganization.

39. Had FLECTAT sought to truly litigate the facts and legal issues before the Ohio Court, it should have sought stay relief under section 362(d)(1) of the Bankruptcy Code, and demonstrated "cause" under the *Curtis* factors. *See In re Touchstone Home Health LLC*, 572 B.R. 255, 277 (Bankr. D. Colo. 2017) (citing *In re Curtis*, 40 B.R. 795, 799–800 (Bankr. D. Utah 1984)); *Truebro, Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty Prods., Inc.)*, 311

B.R. 551, 556–59 (Bankr. C.D. Cal. 2004). Instead, FLECTAT has placed the Court and the Debtor in a procedural morass, forcing the Court to effectively decide the merits of the Ohio Case and Maryland Case in order to determine whether it should grant stay relief. Granting stay relief under section 362(d)(2), which requires a factual finding as to the extent of the Debtor's interests in the Policy and the Binder, would require this Court to invade the province of the Ohio Court and Maryland Court.[3]

### B. The Relief Sought by FLECTAT Must Be Raised in an Adversary Proceeding.

40. FLECTAT has taken the position that "the [D]ebtor does to have an equity interest in [the Policy]" because the "Debtor is not the insured on the Policy nor is the loss payee." 11 U.S.C. § 362(d)(2)(A); Mot. ¶ 13. Stated differently, FLECTAT seeks a determination of the extent of the Debtor's property interests in proceeds under the Policy, and, as stated above, the Binder. This inquiry is wholly inappropriate in a 362(d)(2) summary proceeding, and must, instead, take place in an adversary proceeding.[4] *See* Fed. R. Bankr. P. 7001(2), (9) (requiring an adversary proceeding to "determine the validity, priority, or extent of a lien or other interest in property" or "to obtain a declaratory judgment relating to any of the foregoing"); *In re Carter*, 260 B.R. 130, 131, 131 n.2 (Bankr. W.D. Tenn. 2001) (stating that a judicial determination to determine whether certain post-petition life insurance proceeds constitute property of the estate is an adversary proceeding under Rules 7001(2) and (9) of the Federal Rules of Bankruptcy Procedure). This is exactly the relief sought by FLECTAT.

---

[3] Moreover, in the interests of comity, the Court is unlikely to make such factual or legal findings when those issues are already pending before the Ohio Court and Maryland Court. *See* 28 U.S.C. § 1334(c).

[4] Although an adversary proceeding is the proper vehicle to determine the Debtor's interest in the Policy or the Binder, FLECTAT cannot initiate an adversary proceeding as a veiled attempt to continue the Ohio Case. *See In re Penney*, 76 B.R. 160, 161 (Bankr. N.D. Cal. 1987) (concluding it was nonsense for creditor to believe it could circumvent the automatic stay by filing an adversary proceeding asserting a pre-petition claim).

41.	The purpose of having an adversary proceeding is to provide the parties "with greater procedural protection, requiring a complaint and a summons, providing for an answer and discovery, and generally concluding only after trial or a dispositive motion." *SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)*, 530 F.3d 230, 237 (3d Cir. 2008) (citing *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 451 (2004)). By using a summary proceeding to determine the Debtor's interest in the Policy and the Binder, FLECTAT seeks relief without all of the necessary parties,[5] and with unresolved legal issues and an incomplete factual record. FLECTAT's actions amount to nothing more than an attempt to circumvent the procedural safeguards provided to all of the parties in the Ohio Case and Maryland Case (noticeably absent from this summary proceeding are the other parties in those actions who may have an interest in the resolution of the issue), or any adversary proceeding. Furthermore, such actions are tantamount to FLECTAT getting multiple "bites at the apple" in an effort to litigate its underlying claims in this Court. All of the foregoing actions and underlying motives are not lost on the Debtor who was initially claimed to be a "nominal party" to the Ohio Case [Docket No. 231-3, at 2].

C.	**FLECTAT's Equitable Arguments Are Meritless.**

42.	FLECTAT makes two final equitable arguments in support of its Motion, both of which are unavailing. First, FLECTAT claims "the automatic stay generally does not apply where the Debtor is a nominal defendant and the plaintiff does not seek to recover property of the Debtor's estate." Mot. ¶ 20. The Ohio Court flatly rejected this argument:

> Flectat's assertion that R Investments "is not a defendant in the Complaint, but rather is named solely as an interested party," is contradicted by the caption of the complaint and the docket of this Court, both of which clearly identify R Investments as one of five named "Defendants." Additionally, Flectat's assertion that it is

---

[5] Although the Option Agreement between the Debtor and the Owners is irrelevant in this summary proceeding, the fact that FLECTAT supports its position by pointing to non-parties is further evidence that an adversary proceeding is the appropriate vessel to determine the Debtor's interest in certain property. *See* Mot. ¶ 11. Again, the Court is likely to abstain from litigating such issue when that issue is already before two courts. *See* 28 U.S.C. § 1334(c).

12

willing to dismiss R Investments comes with the caveat that dismissal is subject to debtor's "agreement to be bound by any judgment entered by this Court." ***If no real relief were being sought against R Investments, there would be no need to have named R Investments or for such a condition. And, notwithstanding Flectat's protestations that R Investments does not own the property at issue and has no insurable interest, R Investments clearly believes otherwise since it initiated suit in Maryland state court to recover on its alleged interest***."

Docket No. 231-4, at 3–4 (emphasis added) (citations omitted). FLECTAT's inclusion of the Debtor was not an accident: FLECTAT included the Debtor to completely sidestep the Maryland Case.

43. Moreover, FLECTAT's position is contradicted by its own actions. This is now FLECTAT's ***third*** attempt to litigate the Policy issue in the context of stay proceedings: (i) in an opposition in response to the Debtor's suggestion of stay in the Ohio Case, (ii) in an opposition to the Enforcement Motion in this case, and (iii) in the present Motion. *See* Docket No. 231-4, at 3; Ex. 2; Mot.

44. FLECTAT's second last-ditch argument is that the "Debtor is attempting to use the bankruptcy proceeding as a sword so that insurance coverage litigation will proceed in Maryland, and not Ohio." Mot. ¶ 22. Such argument is unavailing. The Debtor initiated the Maryland Case on November 4, 2020. *See* Docket, Maryland Case. Apparently displeased with litigating in Maryland state court, and in a clear example of forum shopping, FLECTAT initiated the Ohio Case three months later. Although the Debtor employed special counsel for the Maryland Case, that case is currently stayed, and the Debtor has not exercised its rights to continue prosecuting its claims. *See* Fed. R. Bankr. P. 6009; *Parker v. Bain (In re Parker)*, 68 F.3d 1131, 1136 (9th Cir. 1995) (stating Rule 6009 "clarifies that the trustee or debtor in possession has standing to, and may, litigate appropriate actions on behalf of the estate without prior approval of the bankruptcy court"). In fact, all of the parties have agreed to forego prosecuting and defending the Ohio Case (against non-Debtor entities) and the Maryland Case while they engage in mediation. Despite this

13

overture of cooperativeness, FLECTAT is nevertheless continuing to force the Debtor to defend FLECTAT's third attempt to obtain a ruling on the merits in the context of a stay proceeding.

## RESERVATION OF RIGHTS

45. The Debtor reserves the right to recover its actual damages, including costs and attorneys' fees, under section 362(k) of the Bankruptcy Code and/or Rule 9011(b)(1) of the Federal Rules of Bankruptcy Procedure, in connection with opposing the Motion.

WHEREFORE, the Debtor respectfully requests that the Court deny the Motion, and grant such other relief as it deems just and fair.

Dated: October 21, 2021

*/s/ Patrick R. Akers*
Timothy M. Swanson (47267)
Patrick R. Akers (54803)
MOYE WHITE LLP
1400 16th Street, 6th Floor
Denver, Colorado 80202
(303) 292-2900
(303) 292-4510 (facsimile)
tim.swanson@moyewhite.com
patrick.akers@moyewhite.com

*Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2021, I filed a true and correct copy of the foregoing *Debtor's Response in Opposition to FLECTAT, LTD.'s Motion for Relief from Stay* with the Court's electronic CM/ECF filing system and notice of the filing was served upon all parties who have entered their appearance and who are receiving electronic notice.

/s/ Patrick R. Akers
Patrick R. Akers (54803)

*Counsel for the Debtor*