**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re: | ) | Case No. 21-11011-EEB |
| | ) | |
| R. INVESTMENTS, RLLP, | ) | Chapter 11 |
| EIN: 20-8043471 | ) | |
| | ) | |
| Debtor. | ) | |

---

**AMENDED CHAPTER 11 PLAN OF REORGANIZATION DATED AUGUST 16, 2021**

---

Dated: October 31, 2021

Moye White LLP
Timothy M. Swanson (47267)
Patrick R. Akers (54803)
1400 16th Street, 6th Floor
Denver, Colorado 80202
(303) 292-2900
(303) 292-4510 (facsimile)
tim.swanson@moyewhite.com
patrick.akers@moyewhite.com

*Counsel for Debtor*

## INTRODUCTION

R. Investments, RLLP, hereby proposes the following Plan pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* The Plan provides for the reorganization of Debtor's business through the creation of RI-2 NewCo and issuance of Class A Units therein to those Holders of Allowed Unsecured Claims. The Plan restructures Debtor's debts and obligations in order to allow a restructured business model to pay Holders of Claims in accordance with the treatment set forth herein. RI-2 NewCo shall own all of the membership interests in RI-2 SubCo, which entity shall own all of Debtor's Prepetition Real Estate Assets, the membership interests of all of Non-Debtor Affiliates, personal property, and all new assets in accordance with the revised business model set forth in the Disclosure Statement. The Plan allows all of Debtor's and Non-Debtor Affiliates' businesses to be brought under a single entity rather than through the fragmented nature in which such entities operated prepetition. A more complete history of Debtor, its operations, an explanation of this Plan, and a description of Debtor's financial condition and future business activity is contained in the Disclosure Statement, which accompanies this Plan. Reference should be made to the Disclosure Statement by all creditors and parties who intend to cast a ballot for or against this Plan.

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, have not been classified, and the respective treatment of such unclassified Claims is set forth in section 3.1 of this Plan. A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class. A Claim or Interest may be and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular class only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.

## ARTICLE I
## DEFINITIONS

For purposes of this Plan and to the extent not otherwise provided herein, the terms below shall have the respective meanings hereinafter set forth and, unless otherwise indicated, the singular shall include the plural and capitalized terms shall refer to the terms as defined in this Article.

1.1   "3501 EIPO" shall mean 3501 East Independence Place Operator, LLC, a Colorado limited liability company that is an affiliate of Debtor pursuant to section 101(2) of the Bankruptcy Code whose membership interests are owned 99% by Steffens and 1% by Perrin.

1.2   "4747 MRP" shall mean 4747 Montgomery Road Partners, LLC, a Colorado limited liability company that is an affiliate of Debtor pursuant to section 101(2) of the Bankruptcy Code whose membership interests are owned 99% by Steffens and 1% by Perrin.

1.3   "Administrative Claim" shall mean a Claim for payment of an administrative expense or cost of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a) of the Bankruptcy Code, including, but not limited to: (i) the

actual and necessary costs and expenses, incurred after the Petition Date, of preserving the estate and operating the business of Debtor including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Cases; (ii) all Professional Fee Claims approved by the Bankruptcy Court; (iii) all fees and charges assessed against the estate under 28 U.S.C. § 1930; and (iv) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court.

1.4     "Administrative Claim Bar Date" shall mean thirty days after the Effective Date, which is the date established through this Plan for filing of requests for allowance and payment of Administrative Claims, excluding for these purposes Professional Fee Claims which are separately governed by this Plan.

1.5     "Allowed" when used with respect to a Claim other than an Administrative Claim, shall mean a Claim that is: (i) allowed pursuant to this Plan or Final Order of the Court; (ii) the subject of a proof of claim, which was filed or deemed to be filed on or before the applicable Bar Date for filing proofs of Claim or requests for payment of Claims of such type against Debtor and is not a Contested Claim; or (iii) listed by Debtor in its Schedules as liquidated in amount and not disputed or contingent; and in any case as to which no objection as to the allowance thereof has been or will be interposed or as to any such objection there has been a Final Order entered allowing such Claim; or as to which any such objection has been determined by a Final Order allowing all or a portion of such Claim. "Allowed" when used with respect to a Claim that is an Administrative Claim, shall mean an Administrative Claim that has been allowed pursuant to the Plan or allowed pursuant to an order of the Bankruptcy Court.

1.6     "Assets" shall mean, collectively, all of the legal and equitable rights in and to all assets, property, interests, and affects, real and personal, tangible and intangible, wherever situated, held at any time by the Estate including, without limitation, all Causes of Action or other Claims belonging to the Estate or Debtor or belonging to any creditor, and which Assets shall, on the Effective Date, vest in and be turned over to RI-2 SubCo in the manner described in Article 4 of the Plan.

1.7     "Avoidance Actions" shall mean any and all actual or potential claims or Causes of Action against any Person for the avoidance, recovery, subordination, and other similar actions preserved for the Estate under the Bankruptcy Code, including, but not limited to, those set forth in sections 510, 541, 542, 543, 544, 545, 547, 548, 549, 550 and 551 of the Bankruptcy Code, regardless of whether or not such action has been commenced prior to the Effective Date.

1.8     "Bankruptcy Code" shall mean title 11 of the United States Code (11 U.S.C. § 101 *et seq.*), and all amendments thereof applicable to the Chapter 11 Case.

1.9     "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure.

1.10    "Bar Date" shall mean: (i) July 15, 2021, the date established by the Bankruptcy Court by which Proofs of Claim must be filed as set forth in the *Order Granting Debtor's Motion to set Bar Date for Filing Proofs of Claim and Interests and Requests for Allowance of Administrative Expense Claims Under 11 U.S.C. § 503(b)(9), and Approving the Form, Manner, and Notice Thereof* [Docket No. 120]; or (ii) September 6, 2021, the date established by the

Bankruptcy Court by which Proofs of Claim must be filed by Arisha, Inc., Dash 163, LLC, and LMK Realty, Inc. as set forth in the *Order Establishing Bar Date for Specified Creditors for the Filing of Proofs of Claim Pursuant to Fed. R. Bankr. P. 3003(c)(3)* [Docket No. 185].

1.11   "Business Day" shall mean any day other than a Saturday, Sunday or "legal holiday" as that term is defined at Bankruptcy Rule 9006(a).

1.12   "Cash" shall mean legal tender of the United States of America, or Cash equivalents, including currency, checks, and wire transfers of immediately available funds.

1.13   "Causes of Action" shall mean all Claims, and any and all manner of actions, causes of action, suits, adversary proceedings, contested matters, objections, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, rights of indemnification or contribution that the Estate may hold against any Person, of any nature whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise, now owned or hereinafter acquired by Debtor or the Estate, whether arising under any contract or under the Bankruptcy Code or other federal or state law, and whether or not such Causes of Action have been commenced, pursued, or asserted prior to the Effective Date including, without limitation: the Avoidance Actions; any claims or other causes of action for any other violations of Bankruptcy Code provisions; any claims or objections related to Professional Fee Claims; and any claims or other causes of action which may be identified in discovery. Except as may be otherwise provided for in the Plan or approved by the Court prior to the Effective Date, no such Causes of Action shall be released.

1.14   "Chapter 11 Case" shall mean the case pending under chapter 11 of the Bankruptcy Code filed by Debtor on March 4, 2021, identified as *In re R. Investments, RLLP*, Case No. 21-11011-EEB.

1.15   "Claim" shall mean a claim as defined in section 101(5) of the Bankruptcy Code that existed as of the Petition Date.

1.16   "Claims Objection Bar Date" shall mean sixty days after the Effective Date, which shall be the deadline by which Reorganized Debtor must interpose an objection to any Claim or such Claim shall be deemed an Allowed Claim pursuant to the Plan; provided, however, Reorganized Debtor for cause shown may seek an extension of this deadline by the Court.

1.17   "Class" shall mean any class of creditors or interests described in Article II of the Plan.

1.18   "Confirmation" shall mean the entry by the Bankruptcy Court of an order confirming the Plan in accordance with section 1129 of the Bankruptcy Code.

1.19   "Confirmation Date" shall mean the date on which the Confirmation Order is entered on the docket maintained by the clerk of the Court.

1.20   "Confirmation Hearing" shall mean the duly noticed hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of the Plan. The Confirmation Hearing may be adjourned by the Bankruptcy Court from time to time without further notice other than the adjourned date of the Confirmation Hearing.

1.21   "Confirmation Order" shall mean the order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.22   "Contested Claim" shall mean any (i) Claim which is not an Allowed Claim, including, without limitation, any Claim designated as disputed, contingent, and/or unliquidated in Debtor's schedules filed in connection with this case, (ii) Claim against which an objection to the allowance thereof or motion to disallow has been, or will be, interposed, and as to which no Final Order has been entered; (iii) Claim which is the subject of one or more Causes of Action pending against the Holder of such a Claim; or (iv) Claim which is disallowed pursuant to section 502(d) of the Bankruptcy Code.

1.23   "Court" and "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Colorado.

1.24   "Debtor" shall mean R. Investments, RLLP, a Colorado registered limited liability partnership.

1.25   "Disclosure Statement" shall mean the document filed, or to be filed, in connection with this Plan pursuant to section 1125 of the Bankruptcy Code, as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to this Plan, and that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law, and approved by the Court as containing "adequate information" as that term is defined in sections 1125(a)(1) of the Bankruptcy Code, and any exhibits annexed thereto and any documents delivered in connection therewith, as the same may be amended from time to time by any duly authorized amendment or modification.

1.26   "Distribution" shall mean any distribution made pursuant to the Plan, including payments made under the Plan to Holders of Administrative and Priority Claims.

1.27   "DS" shall mean DS IV, LLC.

1.28   "DS Loan Documents" shall mean, collectively, that certain: (a) 18% Senior Secured Note Due November 1, 2019, made, executed and delivered by RI dated November 7, 2017; (b) Security Agreement dated November 7, 2017 executed by RIV; (c) Copyright Collateral Security Agreement and Conditional Assignment dated November 7, 2017; and (d) any other document ancillary to the foregoing.

1.29   "DS Claim" shall mean the Claim filed by DS on the Bankruptcy Court's Claims Register at Claim No. 20-1 in the amount of $5,221,040.41.

1.30   "Effective Date" shall mean the first Business Day falling on or after fifteen days after the Confirmation Date.

1.31     "Entity" shall have the meaning assigned in section 101(15) of the Bankruptcy Code.

1.32     "Equity Interest" and "Interest" shall mean any "equity security" interest in Debtor or any "equity security holder" as those terms are defined in sections 101(16) and (17) of the Bankruptcy Code, and shall include all membership interests in Debtor.

1.33     "Estate" shall mean the bankruptcy estate of Debtor created pursuant to section 541 of the Bankruptcy Code upon the filing of Debtor's chapter 11 voluntary petition, including any post-petition additions.

1.34     "Final Decree" shall mean a Final Order of the Bankruptcy Court closing the Chapter 11 Cases.

1.35     "Final Order" shall mean an order or judgment of the Court or other court of competent jurisdiction, in connection with Debtor's Chapter 11 Case or proceedings therein, which has not been reversed, stayed, modified, or amended, and as to which (i) the time to appeal or seek review, rehearing, or certiorari has expired (without regard to whether the time to seek relief of a judgment under Rule 60(b) of the Federal Rules of Civil Procedure has expired); and (ii) no appeal or petition for review, rehearing, or certiorari is pending, or if pending as to which no bond or other stay has been issued, or as to which any right to appeal or seek review, rehearing, or certiorari has been waived in writing in a manner satisfactory to Debtor.

1.36     "Free Cash Flows" shall mean operating cash flow, which is revenue less operating expenses, which includes payment on account of any post-Confirmation debts less scheduled or discretionary payments made to DS.

1.37     "Holder" shall mean the beneficial owner of any Claim or Interest.

1.38     "Insider" means any Person or Entity who is an insider as such term is defined in section 101(31) of the Bankruptcy Code.

1.39     "Impaired" shall mean a Claim or Interest whereby the legal, equitable, and/or contractual rights of the Holder of such Claim or Interest are altered under the Plan.

1.40     "Lien" shall mean a lien as defined in section 101(37) of the Bankruptcy Code.

1.41     "Non-Debtor Affiliates" shall mean 3501 EIPO, 4747 MRP, RA, RC, RE, RH, RR, RT, RTB, R'K, and R Max.

1.42     "Oversight Committee" shall mean the five representatives of Holders of Class A Units with rights and responsibilities under the RI-2 NewCo Operating Agreement.

1.43     "Person" shall mean an individual, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization or government, governmental unit, or any subdivision thereof, or any other Entity.

1.44    "Prepetition Real Estate Assets" shall mean Debtor's right, title, and ownership interests in and to the following assets: (i) 100% of the Class A Units in 3583 Alaska Avenue Partners, LLC, an Ohio limited liability company, (ii) 100% of the Class A Units in 1905 Elmore Street Partners, LLC, an Ohio limited liability company, (iii) manager interest in Hillside Crossing, LLC, (iv) 100% Class C membership interests and the manager interest in UC Tower, LLC, an Ohio limited liability company, and (v) all rights in the membership interests in 3001 University Center Drive, LLC, a Florida limited liability company.

1.45    "Perrin" shall mean Ms. Jessica Perrin.

1.46    "Petition Date" shall mean March 4, 2021.

1.47    "Plan" shall mean this plan of reorganization, and any exhibits annexed hereto and any documents or supplements delivered or filed in connection herewith as the same may be amended from time to time by any duly authorized amendment or modification as may hereinafter be filed by Debtor.

1.48    "Plan Supplement" means the supplement containing substantially final forms of any documents or schedules necessary to effectuate the terms of this Plan, to be filed with the Clerk of the Bankruptcy Court no later than twenty-one days prior to the Confirmation Hearing.

1.49    "Priority Non-Tax Claim" shall mean an Allowed Claim entitled to priority under section 507(a)(3)–(a)(7) of the Bankruptcy Code.

1.50    "Priority Tax Claim" shall mean an Allowed Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.51    "Professional" shall mean any professional or Person employed or appointed with Court approval to provide professional services to Debtor under section 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code. To the extent allowed by the Court, reasonable compensation for fees and expenses incurred for services provided to Debtor in accordance with section 330(a) of the Bankruptcy Code by any Professional are entitled to payment as a chapter 11 Administrative Claim.

1.52    "Professional Fee Claim" shall mean an Administrative Claim of a Professional for compensation and/or reimbursement of costs and expenses relating to services incurred after the Petition Date and prior to and including the Effective Date, pursuant to sections 328, 330, 331, 503, or 1103 of the Bankruptcy Code, as applicable.

1.53    "Reorganized Debtor" shall mean the reorganized Debtor following that date on which the Confirmation Order confirming the Plan becomes a Final Order.

1.54    "R Max" shall mean R Max Receivership LLC, a Florida limited liability company that is an affiliate of Debtor pursuant to section 101(2) of the Bankruptcy Code whose membership interests are owned 100% by Steffens.

1.55    "R Tek" shall mean R Tek, LLC, a Colorado limited liability company that is an affiliate of Debtor pursuant to section 101(2) of the Bankruptcy Code whose membership

interests are owned 75% by Steffens, 15% by Dusten Hale, 4% by Gina Milano, 4% by Clark Pade, and 2% by Jessica Perrin.

1.56    "RA" shall mean R Academy Global, an affiliate of Debtor pursuant to section 101(2) of the Bankruptcy Code whose membership interests are owned 99% by Steffens and 1% by Perrin.

1.57    "RC" shall mean R. Communities, LLC, a Colorado limited liability company that is an affiliate of Debtor pursuant to section 101(2) of the Bankruptcy Code whose membership interests are owned 99% by Steffens and 1% by Perrin.

1.58    "RE" shall mean R Empowerment, a Colorado nonprofit corporation.

1.59    "RH" shall mean R Homes, LLC, an affiliate of Debtor pursuant to section 101(2) of the Bankruptcy Code whose membership interests are owned 99% by Steffens and 1% by Perrin.

1.60    "RI-2 NewCo" shall mean that certain Delaware limited liability company to be formed upon the Effective Date of the Plan in accordance with the terms of this Plan.

1.61    "RI-2 NewCo Operating Agreement" shall mean that certain operating agreement that forms RI-2 NewCo to be filed with the Plan Supplement.

1.62    "RI-2 SubCo" shall mean that certain Delaware limited liability company to be formed upon the Effective Date of the Plan in accordance with the terms of this Plan.

1.63    "RI-2 SubCo Operating Agreement" shall mean that certain operating agreement that forms RI-2 SubCo to be filed with the Plan Supplement.

1.64    "R'K" shall mean R'K Angles Protection Group, LLC, an affiliate of Debtor pursuant to section 101(2) of the Bankruptcy Code whose membership interests are owned 99% by Steffens and 1% by Perrin.

1.65    "RR" shall mean R Restoration, LLC, a Louisiana limited liability company that is an affiliate of Debtor pursuant to section 101(2) of the Bankruptcy Code whose membership interests are owned 99% by Steffens and 1% by Perrin.

1.66    "RT" shall mean R Teknologies, LLC, a Louisiana limited liability company that is an affiliate of Debtor pursuant to section 101(2) of the Bankruptcy Code whose membership interests are owned 99% by Steffens and 1% by Perrin.

1.67    "RTB" shall mean RTB Constructions Holdings, Inc., a Colorado corporation that is an affiliate of Debtor pursuant to section 101(2) of the Bankruptcy Code whose membership interests are owned 99% by Steffens and 1% by Perrin.

1.68    "Secured Claim" shall mean an Allowed Claim secured by a valid lien, security interest, or other charge against or interest in property in which Debtor or the Estate have an interest, or which is subject to setoff, which is not avoidable under any state or federal laws

including any provision of the Bankruptcy Code, to the extent of the value (determined in accordance with section 506(a) or 502(c) of the Bankruptcy Code and Bankruptcy Rule 3012) of the Interest of the Holder of such Allowed Claim in Debtor's or the Estate's interests in such property or to the extent of the amount subject to such setoff, as the case may be.

1.69   "Steffens" shall mean Mr. William Travis Steffens.

1.70   "Unimpaired" shall mean a Claim or Interest whereby the legal, equitable, and/or contractual rights of the Holder of such Claim or Interest are not altered under the Plan.

1.71   "Unsecured Claim" shall mean a Claim against Debtor or Estate which is unsecured, and which is neither an Administrative Claim, Priority Tax Claim, Priority Non-Tax Claim, or Secured Claim.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and the respective treatment of such unclassified Claims is set forth in section 3.1 of the Plan.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class. A Claim or Interest may be and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular class only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.

2.1   Classification of Unimpaired Claims.

(a)   Class 1: Allowed Priority Non-Tax Claims (Unimpaired).

2.2   Classification of Impaired Claims and Interests.

(a)   Class 2: Allowed Secured Claim of DS (Impaired).

(b)   Class 3: Allowed Unsecured Claims (Impaired).

(c)   Class 4: Equity Interests in Debtor (Impaired).

## ARTICLE III
## TREATMENT OF CLAIMS AND INTERESTS

3.1   Unclassified Claims.

(a)   Administrative Claims.

Except as otherwise provided for herein, and subject to the requirements of paragraph 5.1 of this Plan, on, or as soon as reasonably practicable after, the latest of: (i) the Effective Date, (ii)

9

the date such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date such Administrative Claim becomes payable pursuant to any agreement between Reorganized Debtor and the Holder of such Administrative Claim, each Holder of an Allowed Administrative Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Claim: (y) Cash equal to the unpaid portion of such Allowed Administrative Claim; or (z) such other treatment as to which Reorganized Debtor and such Holder shall have agreed upon in writing.

The anticipated Administrative Claims against the Estate include, but are not limited to, Moye White LLP (bankruptcy counsel for Debtor), G Griggs CPA, Inc. (accountants for Debtor), and the Silver & Brown Law Firm (special counsel for Debtor). Debtor intends to pay such Administrative Claims based upon the terms and conditions set forth in the retention agreements that approved the particular claimant's employment by the Estate unless otherwise agreed to in writing between Debtor and such claimant.

        (b)     Fees Due to the United States Trustee.

As of the date of filing this Plan, Debtor is current on all United States Trustee fees. To the extent that any fees are due to the United States Trustee pursuant to 28 U.S.C. § 1930 on the Effective Date, such fees shall be paid to the United States Trustee in full in Cash on the Effective Date of the Plan. Any fees which become due to the United States Trustee following the Effective Date shall be paid when such fees are due and payable until the Chapter 11 Case is closed, converted, or dismissed.

        (c)     Priority Tax Claims.

Each Holder of an Allowed Priority Tax claim shall receive Cash equal to the unpaid portion of such Allowed Priority Tax Claim, which shall be paid in five annual payments in equal amounts, commencing twelve months after the Effective Date and ending on the fifth anniversary of the Effective Date, and shall bear interest at the rate of 10% per annum. RI-2 NewCo shall be permitted to prepay any portion of any Allowed Priority Tax Claim without premium or penalty at any time.

        3.2     Unimpaired Class of Claims.

        (a)     Class 1: Allowed Priority Non-Tax Claims.

On, or as soon as reasonably practicable after, the latest of (i) the Effective Date, (ii) the date such claim becomes an Allowed Priority Non-Tax Claim, or (iii) the date such Priority Non-Tax Claim becomes payable pursuant to any agreement between Reorganized Debtor and the Holder of such Priority Non-Tax Claim, each Holder of an Allowed Priority Non-Tax Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Non-Tax Claim: (y) Cash equal to the unpaid portion of such Allowed Priority Non-Tax Claim; or (z) such other treatment as to which Reorganized Debtor and such Holder shall have agreed upon in writing.

Class 1 is Unimpaired and each Holder of a Class 1 Priority Non-Tax Claim is conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy

Code. Therefore, Holders of Class 1 Priority Non-Tax Claims are not entitled to vote to accept or reject this Plan.

> 3.3    Impaired Classes of Claims and Interests.

> (a)    Class 2: Allowed DS Secured Claim.

The DS Claim shall be deemed impaired and paid as follows. The DS Claim shall be bifurcated, pursuant to section 506 of the Bankruptcy Code, such that it shall have an Allowed Secured Claim for $750,000.00 (the "**DS Secured Claim**") and an Allowed Unsecured Claim for $4,471,040.41 (the "**DS Unsecured Claim**"). On the Effective Date, in full satisfaction thereof, the DS Secured Claim shall be paid as follows: (i) RI-2 NewCo shall issue a promissory note to DS in the principal amount of $750,000.00 (the "**DS Note**"); (ii) DS's prepetition Liens against Debtor's Assets, existing as of the Petition Date, shall be unaltered by the Plan and shall secure the DS Note; (iii) the DS Note shall bear interest at the rate of 10% per annum; (iv) the monthly payments due under the DS Note shall be $28,359.00, which is based on a thirty month amortization of the DS Secured Claim; (v) RI-2 NewCo shall make thirty monthly payments, commencing six months after the Effective Date and ending on the third anniversary of the Effective Date; (vi) the DS Note shall be paid satisfied and paid in full on the third anniversary of the Effective Date; (vii) RI-2 NewCo shall be permitted to prepay any portion of the DS Note without premium or penalty at any time; (viii) RI-2 NewCo shall provide DS with quarterly financials; and (ix) except as expressly provided for herein, the DS Loan Documents shall be cancelled as of the Effective Date with respect to Debtor's obligations only. The DS Unsecured Claim shall be considered an Allowed Unsecured Claim and treated as such.

> (b)    Class 3: Allowed Unsecured Claims (Impaired).

On the Effective Date, each Holder of an Allowed Unsecured Claim shall receive in exchange for their Unsecured Claim one non-voting Class A unit in RI-2 NewCo for every $5,000.00 of their Allowed Unsecured Claim carried through to the second decimal point (each a "**Class A Unit**"). For illustrative purposes only, a Holder of an Allowed Unsecured Claim in the amount of $13,250.00 shall have 2.65 Class A Units in RI-2 NewCo. Once that Holder of 2.65 Class A Units in RI-2 NewCo receives periodic Distributions, as provide for in the Plan, totaling $16,562.50, such Holder will be considered to be paid in full, and its Class A Units shall be cancelled. RI-2 NewCo shall make periodic distributions of 70% of the Free Cash Flows of RI-2 NewCo's business. As stated below, the remaining 30% of the Free Cash Flows of RI-2 NewCo's business shall be distributed as compensation to RI-2 NewCo's management. All Distributions provided under the Plan shall be distributable *pro rata* to Holders of Class A Units until the Holder of such units has received Distributions totaling 125% of such Holder's Allowed Unsecured Claim. When a Holder of Class A Units has received Distributions totaling 125% of their Allowed Unsecured Claim such Class A Units shall be cancelled. No Distributions will be made to Holders of Class A Units until the DS Secured Claim is paid in full as provided for under this Plan. As additional treatment for Holders of Allowed General Unsecured Claims, Debtor shall distribute the proceeds of Avoidance Actions, net of expenses including attorneys' fees and costs, *pro rata* among those Holders of Class A Units if such proceeds are received.

      (c)      Class 4: Equity Interests of Travis Steffens and Jessica Perrin (Impaired).

On the Effective Date, all of the Interests in Debtor shall be cancelled. Holders of Interests in Debtor shall receive in exchange for their Interests their *pro rata* share of the voting Class B units in RI-2 NewCo (each a "**Class B Unit**"). Holders of Class B Units may agree to assign, bestow, convey, or grant their interests in Class B Units to employees of RI-2 NewCo or any other Person of their choosing after the Effective Date. Holders of Class B Units shall not receive any Distributions, on account of holding a membership interest in RI-2 NewCo, unless and until all Holders of Class A Units are paid in full and all Class A Units are cancelled as provided for in the Plan.

**ARTICLE IV**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

4.1      Implementation of the Plan. Reorganized Debtor will implement and consummate the Plan through the means contemplated by sections 1123(a)(5)(A)-(C), (E) and/or (J), 1123(b)(3)(A) and (B), 1123(b)(5)-(6), and 1142 of the Bankruptcy Code.

4.2      Creation and Purpose of RI-2 NewCo and RI-2 SubCo. On the Effective Date, Reorganized Debtor shall create RI-2 NewCo and all Holders of Allowed Unsecured Claims shall automatically be members of RI-2 NewCo, in accordance with the terms of the RI-2 NewCo Operating Agreement, as provided for in Class 3 of the Plan. The principle purpose of RI-2 NewCo shall be to own all of the membership interests in RI-2 SubCo. RI-2 SubCo shall own: (a) all of Debtor's Prepetition Real Estate Assets, free and clear of all liens, claims, encumbrances, and interests, unless as expressly otherwise provided for in this Plan; (b) all of the membership interests in any future special purpose entities that acquire and own distressed real property consisting of multifamily and/or hospitality ("**Distressed Properties**"); (c) all of Debtor's personal property; and (d) all of Steffens' and Perrin's right, title, and interest in, and to, all of Non-Debtor Affiliates. RI-2 SubCo may also own all of R Tek's owners' right, title, and interest in, and to, R-Tek if (i) this Plan is confirmed as substantially drafted, or (ii) Dusten Hale consents to such consolidation if the Plan is not confirmed as substantially drafted.

4.3      Management of Reorganized Debtor, RI-2 NewCo, and RI-2 SubCo. Management of Reorganized Debtor shall remain exclusively in Steffens in accordance with section 1129(a)(5) of the Bankruptcy Code. Reorganized Debtor may continue to employ a small staff of employees to facilitate Debtor's wind-down as provided for in Section 4.9 herein in order to carry out the terms of this Plan. Management of RI-2 NewCo and RI-2 SubCo shall be exclusively in Steffens and no other Person.

4.4      Creation of Oversight Committee. On the Effective Date of the Plan, Debtor shall select five Holders of Class A Units to form an oversight committee of RI-2 NewCo (the "**Oversight Committee**") which will have certain rights and responsibilities, as set forth in the RI-2 NewCo Operating Agreement. The Oversight Committee's responsibilities shall include the following: (i) approving the employment of a CFO proposed by RI-2 NewCo management; (ii) approving the annual budget proposed by RI-2 NewCo management; (iii) approving the acquisition of distressed properties, including all financing terms associated the procurement of such distressed properties; (iv) approving the retention of an accredited accounting firm proposed

by RI-2 NewCo management; (v) receiving and reviewing detailed quarterly financials presented by RI-2 NewCo management and reviewed by an accredited accounting firm; (vi) approving proposed Distributions on a quarterly basis; (vii) approving terms of all future capital contributions to RI-2 NewCo proposed by RI-2 NewCo management; (viii) approving terms proposed by RI-2 NewCo management to convert Class A Units into direct investments at the property level; and (ix) approving CEO compensation. The Oversight Committee will make decisions on a simple majority basis. The initial slate of Oversight Committee members will be identified in the RI-2 NewCo Operating Agreement. Subsequent Oversight Committee members will be nominated by RI-2 NewCo's CEO and approved by the existing Oversight Committee members.

4.5     Appointment of Independent Accounting Firm. On the Effective Date of the Plan, RI-2 NewCo and RI-2 SubCo, upon the approval of the Oversight Committee, shall hire an independent accounting firm to certify the accuracy of RI-2 NewCo's and RI-2 SubCo's financial results reported for each quarter and monitor both entities' compliance with the Plan as it relates to Distributions to Holders of Class A Units until all such Distributions have been made.

4.6     Acquisition of Distressed Properties. RI-2 SubCo shall aim to identify at least three new Distressed Properties for acquisition each year until the Distributions required to be made to Class 3 hereof have been made. Neither Reorganized Debtor nor Steffens nor any entity in which any of the foregoing hold any beneficial interest in shall seek to acquire any Distressed Property until all of the Distributions required to be made to Holders of Class A Units has been complete.

4.7     Vesting of Prepetition Real Estate Assets and Personal Property Assets in RI-2 SubCo. Except as specifically provided in this Plan, on the Effective Date, and in accordance with this Plan and section 1141(c) of the Bankruptcy Code, all of Debtor's Prepetition Real Estate Assets, personal property assets, and any proceeds thereof shall vest in and be turned over to RI-2 SubCo free and clear of all liens, Claims, Interests and any other rights, obligations, or interests of any Person in, to, or upon the Prepetition Real Estate Assets, unless as expressly otherwise provided for in this Plan.

4.8     Vesting of Causes of Action.  On the Effective Date and in accordance with section 1123(b)(3)(B) of the Bankruptcy Code, Reorganized Debtor shall retain and may (but is not required to) prosecute all Causes of Action. In regard to Causes of Action pending on the Effective Date, Reorganized Debtor shall be deemed to be substituted as the real party in interest in the name and place of Debtor named in such Causes of Action.

4.9     Operation of Reorganized Debtor. Reorganized Debtor shall be empowered to take such actions as may be necessary to perform its obligations under this Plan. After the Effective Date, the affairs of Reorganized Debtor and all assets held or controlled by Reorganized Debtor shall be managed in accordance with the terms of this Plan. Reorganized Debtor shall be the representative of Debtor's Estate pursuant to section 1123 of the Bankruptcy Code and shall have all of the rights, powers, and standing of a debtor in possession under section 1107 of the Bankruptcy Code, and such other rights, powers, and duties incident to causing performance of Debtor's obligations under the Plan as may be necessary.

4.10    <u>Estimation</u>. Reorganized Debtor may at any time request that the Bankruptcy Court estimate, subject to 28 U.S.C. § 157, any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether Debtor or Reorganized Debtor have previously objected to such Claim. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including during proceedings concerning any objection to such Claim.

4.11    <u>Final Decree</u>. After the Plan has been substantially consummated, Reorganized Debtor will file a Motion with the Bankruptcy Court to enter the Final Decree pursuant to sections 350 of the Bankruptcy Code, Bankruptcy Rule 3022, and Local Bankruptcy Rule 3022-1.

4.12    <u>Quarterly Reports</u>. As soon as practicable after each calendar quarter, and in no event later than thirty days after the end of each quarter, Reorganized Debtor shall file with the Bankruptcy Court a quarterly report after the Confirmation Date an unaudited written report and account showing: (a) the assets and liabilities of Reorganized Debtor, (b) any Distributions made and expenses paid pursuant to this Plan, and (c) any material action taken by Reorganized Debtor in the performance of its duties under this Plan that have not been previously reported.

4.13    <u>Employment and Payment of Professionals</u>. Reorganized Debtor is authorized, without further order of the Bankruptcy Court, to employ such Persons, including professionals, as it may deem necessary to enable it to perform the functions hereunder, and the costs of such employment and other expenditures shall be paid by Reorganized Debtor.

4.14    <u>Distribution</u>. Distributions in Cash shall be made in accordance with the Confirmation Order and this Plan. Reorganized Debtor reserves all rights and powers to investigate, prosecute, file, settle, compromise, withdraw, or litigate to judgment in the Bankruptcy Court or on appeal (or pursuant to a withdrawal of the reference of jurisdiction) any pending objections to Claims filed against Debtor, the Estate, or Reorganized Debtor. After the Confirmation Date, only Reorganized Debtor shall have the authority to file objections to Claims filed against Debtor, and to settle, compromise, withdraw, or litigate to judgment those objections to Claims. Reorganized Debtor further reserves all rights and powers to investigate, file, compromise, settle, withdraw, or litigate in the Bankruptcy Court or court of competent jurisdiction, any and all Claims, Causes of Action, or other rights belonging to Reorganized Debtor. Nothing in this Plan or the Confirmation Order shall preclude or estop Reorganized Debtor from bringing a subsequent action in any court or adjudicative body of competent jurisdiction, to enforce any or all of its rights in connection with the Causes of Action, irrespective of the Person, of any interest, cause of action, or nexus of fact, issues, or events which is now or which could have been asserted in this Chapter 11 Case, the present litigation, and those which may be asserted in any subsequent litigation brought by any Person. Moreover, the failure to commence any of the Causes of Action prior to the Confirmation Date shall not constitute res judicata or judicial or collateral estoppel with respect to any Cause of Action.

(a)    <u>Contested Claims</u>. Distributions shall not be made with respect to any Contested Claim.

(b)    Subsequent Distribution. Unless otherwise directed in a Final Order, RI-2 NewCo shall make Distributions to Holders of Class A Units in accordance with the terms of the RI-2 NewCo Operating Agreement.

(c)    Delivery of Distributions. Distributions and deliveries to Holders of Class A Units shall be made at the address set forth on the proofs of claim or interest filed by such Holders (or at the last known address of such holders if no proof of claim or interest is filed or if Reorganized Debtor or RI-2 NewCo has been notified of a change of address).

4.15    Effect of Appeals. Unless the Confirmation Order is stayed pending appeal, at the option of Reorganized Debtor, this Plan may be consummated notwithstanding the pendency of an appeal from the Confirmation Order or the timely service of filing a motion under Bankruptcy Rules 7052, 8002, 8003, 8015, 9023 or 9024.

4.16    Exemption from Certain Taxes and Recording Fees. Pursuant to section 1146(c) of the Bankruptcy Code, any transfer from Debtor to Reorganized Debtor or RI-2 SubCo or to any Entity in accordance with, in contemplation of, in connection with the Plan, or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, Equity Security, or other Interest in Debtor or Reorganized Debtor; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

4.17    Term of Injunctions or Stays. Unless otherwise provided in this Plan, all injunctions or stays arising under or entered during the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order provided for such injunction or stay. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

4.18    Exculpation. Neither Debtor nor any of its respective agents, managers, representatives, attorneys, accountants, advisors, or Professionals shall have or incur any liability for any past or present actions whether prepetition or post-petition, taken or omitted to be taken under, in connection with, related to, affecting, or arising out of this Chapter 11 Case, the formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or effecting the Consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, or any other post-petition act taken or omitted to be taken in connection with or in contemplation of

the restructuring of Debtor, except for claims based on gross negligence or willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan or in the context of this Chapter 11 Case.

4.19    Injunction as to Debtor, Reorganized Debtor, RI-2 NewCo, and RI-2 SubCo. Except as otherwise expressly provided in the Plan or for obligations issued pursuant to the Plan, all Entities who have held, hold, or may hold Claims or Interests that have been released, administered, discharged, or subject to exculpation pursuant to the Plan are permanently enjoined, from and after the Effective Date, from taking any of the following actions against Debtor, Reorganized Debtor, RI-2 NewCo, or RI-2 SubCo: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property or Estate of such Entities on account of or in connection with or with respect to any such Claims or Interests except in accordance with the provision of this Plan; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, administered, or settled pursuant to the Plan.

4.20    Injunction Against Interference with the Plan. Upon entry of the Confirmation Order, all Holders of Claims and Interests and other parties-in-interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

### ARTICLE V
### CLAIMS RESOLUTION

5.1    Deadline for Filing of Administrative Claims.

(a)    Any person asserting an Administrative Claim (other than a Professional Fee Claim) shall file with the Court, and serve on Reorganized Debtor, a request for payment of such Administrative Claim within thirty days after the Effective Date. Such notice must include at a minimum (i) the name of the Holder of the Claim; (ii) the amount of the Claim; and (iii) the basis of the Claim. Failure to file timely and properly the notice required by this section shall result in the Claim being forever barred, and Reorganized Debtor and the Estate shall be discharged of any obligation on such Claim. Should Reorganized Debtor object to any Administrative Claim that is not a Professional Fee Claim within twenty-one days after such Claim is timely filed and served, such Claim shall be resolved by Final Order of the Court.

(b)    Any Person who holds, or asserts, an Administrative Claim that is a Professional Fee Claim for services rendered and expenses incurred prior to and including the Confirmation Date, shall be required to file with the Bankruptcy Court and serve, pursuant to

Local Bankruptcy Rule 9013-1, on all Persons required to receive notice, a Final Fee Application within thirty days after the Effective Date. Failure to timely file a final fee application as required by this section shall result in the Professional Fee Claim being forever barred, and Reorganized Debtor and the Estate shall be discharged of any obligation on such Claim, to the extent such Professional Fee Claim exceeds amounts previously authorized for payment by the Bankruptcy Court. Should Reorganized Debtor object to any Professional Fee Claim within twenty-one days after such Professional Fee Claim is timely filed and served, such Professional Fee Claim shall be resolved by Final Order of the Court. After Court approval by Final Order, the Holder of a Professional Fee Claim shall receive Cash in the amount awarded to such Professionals and Entities at such times and only in accordance with a Final Order entered pursuant to sections 330, 331, 503(b)(2) through (6), or 1103 of the Bankruptcy Code, as applicable.

5.2     Exclusive Right of Reorganized Debtor to Object to Claims. As of the Effective Date of the Plan, Reorganized Debtor shall have the exclusive right to file, serve, and prosecute objections to Contested Claims.

5.3     Time Limit for Filing Objections to Claims.

(a)     Reorganized Debtor shall have the exclusive authority to investigate, prosecute, file, settle, compromise, withdraw, or litigate to judgment in the Bankruptcy Court or on appeal (or pursuant to a withdrawal of the reference of jurisdiction) any pending objections to or motions to disallow Claims against Debtor not resolved by settlement agreement or Final Order prior to the Confirmation Date. After the Confirmation Date, only Reorganized Debtor shall have the authority to file objections to, or motions to, disallow Claims filed against Debtor, and to settle, compromise, withdraw, or litigate to judgment those objections to Claims. Any post-confirmation objections to or motions to disallow Claims (other than Administrative Claims and Professional Fee Claims) shall be filed with the Court and served upon each Holder of the Claims to which objections are made not later than the Claims Objection Bar Date (180 days after the Effective Date), or such later date as the Court may order with respect to a particular Claim or group of Claims.

(b)     The resolution of any objection to or motion to disallow a Claim shall be governed by the Bankruptcy Code, the Bankruptcy Rules, the Confirmation Order, the Plan, or such other provisions as may be established by the Court.

(c)     Any Claim as to which an objection to or motion to disallow is not timely filed by the Claims Objection Bar Date shall be deemed an Allowed Claim, unless: (i) an extension of the Claims Objection Bar Date is obtained from the Bankruptcy Court in accordance with Bankruptcy Rule 9006, this Plan, or by agreement regarding any particular Claim; or (ii) such Claim is subject to disallowance under section 502(d) of the Bankruptcy Code, in which case such Claim shall be deemed disallowed in accordance with section 502(d) of the Bankruptcy Code without the need for filing an objection thereto.

5.4     Late Claims. No Distribution shall be made on account of any Claims filed after the Bar Date, or on account of any Administrative Claims filed after the Administrative Claim Bar Date.

**ANY AND ALL PROOFS OF CLAIM FILED AFTER THE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS ON OR BEFORE THE CONFIRMATION DATE SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.**

**EXCEPT AS OTHERWISE AGREED IN WRITING BY REORGANIZED DEBTOR, ANY AND ALL ADMINISTRATIVE CLAIMS FILED AFTER THE ADMINISTRATIVE CLAIM BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AFTER THE ADMINISTRATIVE CLAIM BAR DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH ADMINISTRATIVE CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH ADMINISTRATIVE CLAIMS.**

**ARTICLE VI**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

6.1    It is Debtor's intention to reject all Executory Contracts. However, notwithstanding, prior to the Effective Date, Debtor will file a separate motion which requests the assumption, assumption and assignment, or rejection of all Executory Contracts to which Debtor is a party pursuant to section 365 of the Bankruptcy Code, Bankruptcy Rule 7004 and L.B.R. 9013-1. To the extent Debtor seeks to make any order granting such relief effective after the Confirmation Date, Debtor will make this known in such motion. Any proofs of claim based upon the rejection of an Executory Contract shall be filed with the Bankruptcy Court no later than thirty days after the Effective Date and any such proofs of claim filed after thirty days of the Effective Date shall be forever disallowed against Debtor and/or Reorganized Debtor. Any cure payments to be made on account of any Executory Contract to be assumed or assumed and assigned by separate motion shall designate the amount of the cure and payor of the cure.

**ARTICLE VII**
**CONFIRMATION RETENTION OF JURISDICTION**

7.1    <u>Jurisdiction Retained</u>. Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Interest not otherwise allowed under the Plan, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Interests;

(b)    Hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 330, 331, 503(b), 1103, and

1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of the fees and expenses of Reorganized Debtor shall be made in the ordinary course of business or as provided in this Plan and shall not be subject to approval of the Bankruptcy Court;

      (c)    Hear and determine all matters with respect to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which Debtor is a party or with respect to which Debtor may be liable;

      (d)    Effectuate performance of and payments under the provisions of the Plan;

      (e)    Hear and determine any and all adversary proceedings, motions, applications, and contested matters arising out of, under, or related to the Chapter 11 Case;

      (f)    Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

      (g)    Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

      (h)    Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

      (i)    Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

      (j)    Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

      (k)    Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order, including this Plan;

      (l)    Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case;

      (m)    Except as otherwise limited herein, recover all assets of Debtor and property of the Estate, wherever located;

      (n)    Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346 through 505 and 1146 of the Bankruptcy Code;

(o)     Modify the Plan or at the request of Reorganized Debtor and as provided by applicable law;

(p)     Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

(q)     Enter a Final Decree closing the Chapter 11 Case.

## ARTICLE VIII
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE

8.1     <u>Conditions to Confirmation</u>. The Confirmation Order shall have been entered and be in form and substance reasonably acceptable to Debtor.

8.2     <u>Conditions to Effective Date</u>. Notwithstanding any other provision of the Plan or the entry of an order confirming this Plan, the Plan shall not become effective and Reorganized Debtor shall not be required to perform its obligations under the Plan unless and until the following events have occurred or have been performed:

(a)     The Plan must be confirmed by a Confirmation Order.

(b)     No request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made or if made, shall remain pending, including any appeal.

(c)     All documents necessary to implement the transactions contemplated by this Plan shall be in form and substance reasonably acceptable to Debtor including the RI-2 NewCo Operating Agreement and RI-2 SubCo Operating Agreement.

## ARTICLE IX
## AMENDMENT OF OPERATING AGREEMENT, ARTICLES OF INCORPORATION, AND/OR BYLAWS OF DEBTOR

If necessary or as may be required, the Operating Agreement, Articles, and/or Bylaws of Debtor may be amended at any time within 180 days after the Effective Date to the extent necessary to effectuate the provisions of this Plan.

## ARTICLE X
## MISCELLANEOUS

10.1     <u>Plan Defaults and Remedies Therefore</u>. Unless otherwise agreed, no default shall be declared under the Plan unless any payment or performance due under the Plan (other than a payment required on the Effective Date) shall not have been made or deemed made thirty calendar days after written notice of the default (a "**Default Notice**") is received by RI-2 NewCo. Any Default Notice shall (i) conspicuously state that it is a Default Notice; (ii) describe with particularity the nature of the default, including a reference to the specific provisions of the Plan as to which a default or defaults have allegedly occurred; and (iii) describe any action required to

cure the default, including the exact amount of any payment required to cure such default, if applicable.

Management for RI-2 NewCo shall promptly review the Default Notice and provide a copy of the same to the Oversight Committee. RI-2 NewCo shall either cure the default alleged in the Default Notice or otherwise respond to the Default Notice within thirty calendar days of receiving the Default Notice. To the extent necessary to cure an alleged default, RI-2 NewCo, in consultation with the Oversight Committee, may liquidate any Distressed Property or personal property, obtain financing, or effectuate any other means necessary to cure the default. If RI-2 NewCo fails to either cure or respond to a Default Notice within thirty calendar days after receipt thereof, the party claiming an event of default may pursue its legal rights and remedies as created under this Plan, *e.g.*, Class 2 claimants may pursue their legal rights and remedies as a creditor of RI-2 NewCo, and Class 3 claimants may pursue their legal rights and remedies as a Holder of Class A Units.

10.2    <u>Payment of Statutory Fees</u>. All fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date. All fees payable and arising after the Confirmation Hearing pursuant to 28 U.S.C. § 1930 shall be paid by Reorganized Debtor as required by applicable law.

10.3    <u>Modifications and Amendments</u>. At any time prior to the Confirmation Date, Debtor may alter, amend, modify, revoke, or withdraw the Plan or any Plan exhibit or schedule under section 1127(a) of the Bankruptcy Code, including any action to amend or modify the Plan to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary, in its sole and absolute discretion. After the Confirmation Date and prior to the substantial consummation of the Plan, as defined in section 1101(2) of the Bankruptcy Code, Reorganized Debtor may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omissions or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan and such proceedings do not materially adversely affect the treatment of Holders of the Claims under the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

10.4    <u>Severability of Plan Provisions</u>. If, prior to the Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

21

10.5     Binding Effect. The Plan shall be binding upon and inure to the benefit of Debtor, all present and former Holders of Claims against and Interests in Debtor, any of Debtor's successors and assigns, including, but not limited to, Reorganized Debtor, and all other parties-in-interest in this Chapter 11 Case, including, without limitation, any Person receiving or entitled to receive payments or property under the terms of this Plan. In accordance with section 1142(b) of the Bankruptcy Code, on and after the Effective Date, Reorganized Debtor shall be deemed authorized and empowered to execute or deliver or to join in the execution or delivery of any instrument (including without limitation this Plan) required to effect a transfer of property dealt with by the Plan, and to perform any other act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan. If any necessary party refuses or fails to execute, deliver or join in the execution or delivery of any instrument required to effect a transfer of property dealt with by the Plan or perform any other act, including the satisfaction of a lien necessary to consummation of the Plan, or execution of an assignment pursuant to the Plan, the Court may order the same or order the Clerk of the Court to execute the document, release, assignment, or other instrument or agreement.

10.6     Revocation, Withdrawal, Cram-Down, or Non-Consummation.

(a)     Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization. If Debtor revokes or withdraws the Plan, or if Confirmation or consummation does not occur, then (a) the Plan shall be null and void in all respects, (b) assumption or rejection of executory contracts and unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, Debtor or any other Person, (ii) prejudice in any manner the rights of Debtor or any Person in any further proceedings involving Debtor, or (iii) constitute an admission of any sort by Debtor or any other Person.

(b)     Debtor reserves any and all rights it may have under section 1129(b) of the Bankruptcy Code, notwithstanding any rejection of the Plan by any Class of Claims or Interests.

10.7     Satisfaction of Claims. Except as otherwise provided herein or in the Confirmation Order, the rights afforded in this Plan and the payments and Distributions to be made hereunder shall be in complete exchange for, and in full satisfaction, discharge and release of, all existing debts and Claims of any kind, nature, or description whatsoever against Debtor or any of its Assets; and upon the Effective Date, all existing claims against Debtor shall be, and be deemed to be, exchanged, satisfied, discharged, and released in full; and all Holders of Claims shall be precluded from asserting against Debtor, Reorganized Debtor, or the Assets any other or further Claim based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such Holder filed a proof of claim. This Plan and the terms hereof supersedes and replaces any promissory notes, leases, loan agreements, notes, contracts, or other written agreements between Debtor and any of the Holders of Claims, except as otherwise expressly provided in this Plan.

10.8     Effect of Confirmation Order. Except as provided for in this Plan, the Confirmation Order shall be a judicial determination of satisfaction of all claims against Debtor

with regard to all debts that arose before the Effective Date and any liability on a claim that is determined under section 502 of the Bankruptcy Code as if such claim had arisen before the Effective Date, whether or not a proof of claim based on any such date or liability is filed under section 501 of the Bankruptcy Code and whether or not a claim based on such debt or liability is allowed under section 502 of the Bankruptcy Code.

10.9    <u>Enforcement of Claims and Reservation of Rights</u>. Subject to Bankruptcy Court approval, Reorganized Debtor shall retain and enforce (or compromise and settle) all Claims and Causes of Action belonging to Debtor or the Estate pursuant to section 1123(b)(3) of the Bankruptcy Code, including, but not limited to, all claims under sections 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any Claims arising or owing under any insurance policies or contracts of insurance. Except as otherwise explicitly provided in this Plan, nothing shall affect Reorganized Debtor's or the Estate's Claims, Causes of Action, rights and defenses, both legal and equitable, with respect to any claim filed or asserted against Reorganized Debtor, Debtor, or the Estate, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoffs or recoupment and all such rights and defenses. Instead, these claims, Causes of Action, rights and defenses of Reorganized Debtor, Debtor, or the Estate shall be deemed specifically reserved and shall not be deemed waived or abandoned at any time.

10.10    <u>Exhibits/Schedules</u>. All exhibits and schedules to the Plan and the Plan Supplement are incorporated into and constitute a part of the Plan as if fully set forth herein.

10.11    <u>Filing or Execution of Additional Documents</u>. On or before the Effective Date, Debtor or Reorganized Debtor, as the case may be, shall file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

10.12    <u>Successors and Assigns</u>. The rights, benefits and obligations of any named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

10.13    <u>Notices</u>. Any notice, request, or demand required or permitted to be provided under this Plan shall be in writing and served by either: (i) certified mail, return receipt requested, postage prepaid; (ii) hand delivery; or (iii) reputable overnight courier service, freight prepaid, to be addressed as follows:

(a) To Debtor:

    c/o Mr. Travis Steffens
    1624 Market Street, Suite 226
    Denver, Colorado 80202

    --with a copy to--

Moye White LLP
c/o Tim Swanson, Esq.
1400 16th Street, 6th Floor
Denver, Colorado 80202

10.14   <u>Headings</u>. The headings used in the Plan are solely for the convenience of the reader and do not in any way limit, expand, or modify the provisions of the Plan to which they refer.

10.15   <u>Definitions</u>. All terms defined by the Bankruptcy Code and which are not defined in the Plan shall have the meaning given to such term by the Bankruptcy Code, unless the context otherwise requires.

10.16   <u>Performance on the Effective Date</u>. Any act required by the Plan to be done on the Effective Date may be done within a reasonable time thereafter without constituting a default under the Plan.

10.17   <u>Attorneys' Fees</u>. In the event that any party brings an action to enforce or interpret the provisions of the Plan following the Confirmation Date, including any proceedings, disputes, or contested matters regarding Professional Fee Claims, the prevailing party in such action shall be entitled to its costs and reasonable attorneys' fees incurred in prosecuting or defending such action.

**[INTENTIONAL PAGE BREAK—SIGNATURE PAGE FOLLOWS]**

Dated: October 31, 2021                    SUBMITTED BY R. INVESTMENTS, RLLP


William Travis Steffens
Chief Executive Officer


APPROVED AS TO FORM:


/s/ Patrick R. Akers
Timothy M. Swanson (47267)
Patrick R. Akers (54803)
MOYE WHITE LLP
1400 16th Street, 6th Floor
Denver, Colorado 80202
(303) 292-2900
(303) 292-4510 (facsimile)
tim.swanson@moyewhite.com
patrick.akers@moyewhite.com

*Counsel for Debtor*