**LIMITED LIABILITY COMPANY AGREEMENT**
**OF**
**RI-2 SUBCO, LLC**

THIS LIMITED LIABILITY COMPANY AGREEMENT (this "Agreement") of RI-2 SubCo, LLC, a Delaware limited liability company (the "Company") is entered into by and between the Company and RI-2 NewCo, as the sole member of the Company (the "Member").

WHEREAS, on March 4, 2021, R. Investments, RLLP (the "Debtor") commenced a voluntary petition under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Colorado (the "Court"), styled as *In re R. Investments, RLLP*, Case No. 21-21011-EEB (the "Bankruptcy Case");

WHEREAS, on [•], 2022, the Court confirmed the Debtor's *Third Amended Chapter 11 Plan of Reorganization Dated August 16, 2021* (the "Plan");

WHEREAS, on [•], 2022 (the "Effective Date"), the Plan went effective by its terms thereby making this Agreement effective as to the Company and the Member;

WHEREAS, the Company was formed as a limited liability company on [•], 2022 by the filing of a Certificate of Formation with the Secretary of State of the State of Delaware pursuant to and in accordance with the Delaware Limited Liability Company Act, as amended from time to time (the "Act"); and

WHEREAS, the Member agrees that the membership in and management of the Company shall be governed by the terms set forth herein.

NOW, THEREFORE, the Member agrees as follows:

1.  Name. The name of the Company is RI-2 SubCo, LLC.

2.  Purpose. The purpose of the Company is to engage in any lawful act or activity for which limited liability companies may be formed under the Act and to engage in any and all activities necessary or incidental thereto.

3.  Principal Office; Registered Agent.

    (a)  Principal Office. The location of the principal office of the Company shall be 1624 Market Street, Suite 226 #24937, Denver, CO 80202, or such other location as the Member may from time to time designate.

    (b)  Registered Agent. The registered agent of the Company for service of process in the State of Delaware and the registered office of the Company in the State of Delaware shall be that person and location reflected in the Certificate of Formation. In the event the registered agent ceases to act as such for any reason or the registered office shall change, the Member shall promptly designate a replacement registered agent or file a notice of change of address, as the case may be, in the manner provided by law.

4. <u>Members</u>.

(a) <u>Initial Member</u>. The Member owns 100% of the membership interests in the Company. The name of the Member is RI-2 NewCo, LLC and the business, residence, or mailing address of the Member is 1624 Market Street, Suite 226 #24937, Denver, CO 80202.

(b) <u>Additional Members</u>. One or more additional members may be admitted to the Company with the consent of the Member. Prior to the admission of any such additional members to the Company, the Member shall amend this Agreement to make such changes as the Member shall determine to reflect the fact that the Company shall have such additional members. Each additional member shall execute and deliver a supplement or counterpart to this Agreement, as necessary.

(c) <u>Membership Interests; Certificates</u>. The Company will not issue any certificates to evidence ownership of the membership interests.

(d) <u>Liability of Member</u>. Except as otherwise required in the Act, the debts, obligations, and liabilities of the Company, whether arising in contract, tort, or otherwise, shall be solely the debts, obligations, and liabilities of the Company, and the Member shall not be obligated personally for any such debt, obligation, or liability of the Company solely by reason of being the Member or participating in the management of the Company.

5. <u>Management</u>.

(a) <u>Authority; Powers and Duties of the Member</u>. The Member shall have exclusive and complete authority and discretion to manage the operations and affairs of the Company and to make all decisions regarding the business of the Company. Any action taken by the Member shall constitute the act of and serve to bind the Company. Persons dealing with the Company are entitled to rely conclusively on the power and authority of the Member as set forth in this Agreement. The Member shall have all rights and powers of a manager under the Act, and shall have such authority, rights and powers in the management of the Company to do any and all other acts and things necessary, proper, convenient, or advisable to effectuate the purposes of this Agreement.

(b) <u>Election of Officers; Delegation of Authority</u>. The Member may, from time to time, designate one or more officers with such titles as may be designated by the Member to act in the name of the Company with such authority as may be delegated to such officers by the Member (each such designated person, an "<u>Officer</u>"). The initial officers of the Company will be Steffens (CEO), Gina Milano (COO), and Michael Bennett (CFO). Any such Officer shall act pursuant to such delegated authority until such Officer is removed by the Member. Any action taken by an Officer designated by the Member pursuant to authority delegated to such Officer shall constitute the act of and serve to bind the Company. Persons dealing with the Company are entitled to rely conclusively on the power and authority of any Officer set forth in this Agreement and any instrument designating such Officer and the authority delegated to him or her.

6. Indemnification

(a) Covered Person. As used herein, the term "Covered Person" shall mean (i) the Member, (ii) each officer, director, partner, member, employee, agent, or representative of the Member, and (iii) each Officer, employee, agent, or representative of the Company.

(b) Standard of Care. No Covered Person shall be liable to the Company or any other Covered Person for any loss, damage, or claim incurred by reason of any action taken or omitted to be taken by such Covered Person in his, her, or its capacity as a Covered Person, so long as such action or omission does not constitute fraud, gross negligence, willful misconduct, or a material breach or knowing violation of this Agreement by such Covered Person.

(c) Good Faith Reliance. A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports, or statements (including financial statements and information, opinions, reports, or statements as to the value or amount of the assets, liabilities, net income, or net losses of the Company, or any facts pertinent to the existence and amount of assets from which distributions might properly be paid) of the following persons or groups: (i) another Member; (ii) one or more Officers or employees of the Company; (iii) any attorney, independent accountant, appraiser, or other expert or professional employed or engaged by or on behalf of the Company; or (iv) any other person selected in good faith by or on behalf of the Company, in each case as to matters that such relying person reasonably believes to be within such other person's professional or expert competence. The preceding sentence shall in no way limit any person's right to rely on information to the extent provided in Section 18-406 of the Act.

(d) Limitation of Liability. This Agreement is not intended to, and does not, create or impose any fiduciary duty on any Covered Person. Furthermore, each of the Members and the Company hereby waives any and all fiduciary duties that, absent such waiver, may be implied by applicable law, and in doing so, acknowledges and agrees that the duties and obligation of each Covered Person to each other and to the Company are only as expressly set forth in this Agreement. The provisions of this Agreement, to the extent that they restrict the duties and liabilities of a Covered Person otherwise existing at law or in equity, are agreed by the Members to replace such other duties and liabilities of such Covered Person.

(e) Indemnification. To the fullest extent permitted by the Act, as the same now exists or may hereafter be amended, substituted, or replaced (but, in the case of any such amendment, substitution or replacement, only to the extent that such amendment, substitution, or replacement permits the Company to provide broader indemnification rights than the Act permitted the Company to provide prior to such amendment, substitution, or replacement), the Company shall indemnify, hold harmless, defend, pay, and reimburse any Covered Person against any and all losses, claims, damages, judgments, fines or liabilities, including reasonable legal fees or other expenses incurred in investigating or defending against such losses, claims, damages, judgments, fines, or liabilities, and any amounts expended in settlement of any claims (collectively, "Losses") to which such Covered Person may become subject by reason of:

3

    (i) any act or omission or alleged act or omission performed or omitted to be performed on behalf of the Company, any Member or any direct or indirect subsidiary of the foregoing in connection with the business of the Company; or

    (ii) such Covered Person being or acting in connection with the business of the Company as a member, manager, director, Officer, employee, or agent of the Company, any Member, or any of their respective affiliates, or that such Covered Person is or was serving at the request of the Company as a member, manager, director, Officer, employee, or agent of any person including the Company;

    *provided*, that (x) such Covered Person acted in good faith and in a manner believed by such Covered Person to be in, or not opposed to, the best interests of the Company and within the scope of such Covered Person's authority conferred on him or it by the Company and, with respect to any criminal proceeding, had no reasonable cause to believe his conduct was unlawful, and (y) such Covered Person's conduct did not constitute fraud, gross negligence, willful misconduct, or a material breach or knowing violation of this Agreement by such Covered Person. In connection with the foregoing, the termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the Covered Person did not act in good faith or, with respect to any criminal proceeding, had reasonable cause to believe that such Covered Person's conduct was unlawful, or that the Covered Person's conduct constituted fraud, gross negligence, willful misconduct, or a material breach or knowing violation of this Agreement.

   (f) <u>Reimbursement</u>. The Company shall promptly reimburse (and/or advance to the extent reasonably required) each Covered Person for reasonable legal or other expenses (as incurred) of such Covered Person in connection with investigating, preparing to defend, or defending any claim, lawsuit, or other proceeding relating to any Losses for which such Covered Person may be indemnified pursuant to this Section 6; *provided*, that if it is finally judicially determined that such Covered Person is not entitled to the indemnification provided by this Section 6, then such Covered Person shall promptly reimburse the Company for any reimbursed or advanced expenses.

   (g) <u>Entitlement to Indemnity</u>. The indemnification provided by this Section 6 shall not be deemed exclusive of any other rights to indemnification to which those seeking indemnification may be entitled under any agreement or otherwise. The provisions of this Section 6 shall continue to afford protection to each Covered Person regardless of whether such Covered Person remains in the position or capacity pursuant to which such Covered Person became entitled to indemnification under this Section 6 and shall inure to the benefit of the executors, administrators, legatees, and distributees of such Covered Person.

  7. <u>Term</u>. The term of the Company shall be perpetual unless the Company is dissolved and terminated in accordance with Section 11.

  8. <u>Initial Capital Contributions</u>. On the Effective Date of the Plan, the Company shall own: (a) all of the Debtor's Prepetition Real Estate Assets (as that term is defined in the Plan), free and clear of all liens, claims, encumbrances, and interests, unless as expressly otherwise provided for in the Plan; (b) all of the membership interests in any future special purpose entities that acquire

4

and own distressed real property consisting of multifamily and/or hospitality; (c) all of the Debtors personal property; (d) all of William Travis Steffens' and Jessica Perrin's right, title, and interest in, and to, all of Non-Debtor Affiliates (as that term is defined in the Plan); and (e) a 55% interest in R Tek II, LLC.

9. Tax Status; Income and Deductions.

(a) Tax Status. As long as the Company has only one member, it is the intention of the Company and the Member that the Company be treated as a disregarded entity for federal and all relevant state tax purposes and neither the Company nor the Member shall take any action or make any election which is inconsistent with such tax treatment. All provisions of this Agreement are to be construed so as to preserve the Company's tax status as a disregarded entity.

(b) Income and Deductions. All items of income, gain, loss, deduction and credit of the Company (including, without limitation, items not subject to federal or state income tax) shall be treated for federal and all relevant state income tax purposes as items of income, gain, loss, deduction, and credit of the Member.

10. Distributions. All income received by the Company, including, but not limited to, all operating cash flow (i.e., revenue less expenses) received on account of the Company's membership interests, shall be distributed to the Member.

11. Dissolution; Liquidation.

(a) The Company shall dissolve, and its affairs shall be wound up upon the first to occur of the following: (i) the written consent of the Member or (ii) any other event or circumstance giving rise to the dissolution of the Company under Section 18-801 of the Act, unless the Company's existence is continued pursuant to the Act.

(b) Upon dissolution of the Company, the Company shall immediately commence to wind up its affairs and the Member shall promptly liquidate the business of the Company. During the period of the winding up of the affairs of the Company, the rights and obligations of the Member under this Agreement shall continue.

(c) In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied as follows: (i) first, to creditors, to the extent otherwise permitted by law, in satisfaction of liabilities of the Company (whether by payment or the making of reasonable provision for payment thereof); and (ii) thereafter, to the Member.

(d) Upon the completion of the winding up of the Company, the Member shall file a Certificate of Dissolution in accordance with the Act.

12. Miscellaneous.

(a) Amendments. Amendments to this Agreement may be made only with the consent of the Member.

(b) <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction).

(c) <u>Severability</u>. In the event that any provision of this Agreement shall be declared to be invalid, illegal or unenforceable, such provision shall survive to the extent it is not so declared, and the validity, legality and enforceability of the other provisions hereof shall not in any way be affected or impaired thereby, unless such action would substantially impair the benefits to any party of the remaining provisions of this Agreement.

[*signature page follows*]

IN WITNESS WHEREOF, the undersigned has executed this Agreement to be effective as of the Effective Date.

**MEMBER**:

**RI-2 NewCo, LLC**, a Delaware limited liability company

By: _____
Name: William Travis Steffens
Title: Manager

**COMPANY**:

**RI-2 SubCo, LLC**, a Delaware limited liability company

By: _____
Name: William Travis Steffens
Title: Manager and Member